hGORBATY, Judge.
On June 17, 1982, the defendant, Frank Winding, Jr., was charged by grand jury indictment with aggravated rape, to which he pleaded not guilty. After a trial, a twelve-member jury found him guilty as charged. On June 2, 1983, he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant filed an errors patent appeal, and his conviction and sentence were affirmed by this court. State v. Winding, unpub. (KA-1833, La. App. 4 Cir.1984). Defendant was granted *387 an out-of-time appeal on November 20, 1991, pursuant to Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990). This court again affirmed defendant’s conviction and sentence. State v. Winding, unpub. 92-KA-0855 (La.App. 4 Cir.1993), 618 So.2d 1249, and the Supreme Court denied writs, State v. Winding, 626 So.2d 1166, (La.1993). Defendant filed an application for post-conviction relief. On November 3, 1998, this court granted defendant a second out-of-time appeal pursuant to State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Defendant subsequently filed this appeal.

\ .FACTS

L.T.[1] testified that on March 28, 1982, between 5:00 and 5:30 a.m., she awakened when defendant began choking her. L.T., who was fourteen years old at the time, screamed, and the defendant pressed a knife against her throat. He threatened to stab her with the knife if she did not stop screaming. She stated that defendant then ripped off her underwear and raped her.
When L.T.’s roommate, Keri Turner, knocked on the door, defendant jumped and asked L.T. to hide him. Defendant left, and she ran to open the door for Ms. Turner. She told Ms. Turner that the defendant had raped her. L.T. testified that she knew defendant because she saw him at the apartment when he came to visit one of her roommates. Ms. Turner ran to the kitchen window and saw defendant running toward his house, which was a block away.
L.T. and Ms. Turner left the apartment to search for another roommate. After checking at a nearby bar, which they discovered was closed, they returned home and found them other roommate, Artez Johnson, already there. They told her what had happened, and she called the police. All three women then went to the defendant’s house, spoke with his mother and sister, and returned to their apartment. Defendant came to the apartment shortly thereafter to explain what happened, but he was refused entry.
Officers Albert Jones and Neal Charles received the call at 6:05 a.m., and they went to the apartment. They interviewed L.T., and she gave them the name of her attacker. She told the officers that she knew defendant because he sometimes came to the apartment to visit one of her roommates. The officers arrested | ^defendant and confiscated the victim’s clothing and bedding. Testing of a vaginal swab of the victim was positive for the presence of seminal fluid and spermatozoa.
Defense witnesses testified that the defendant attended a party given by Louise Thomas, which was held in the apartment complex where defendant lived. They stated that defendant stayed at the party until 5:00 a.m., when he left to walk Cynthia Winding and Gina Gaines home. They also said that he returned at 5:20 a.m., at which time he left with his sister, Loritea, and Wilmer Johnson, a friend. Johnson testified that he and defendant talked for a few minutes after Loritea went into her apartment. Johnson further testified that he went to his apartment and that he could hear the door to defendant’s apartment open and close. He admitted that he could not state with certainty that defendant went inside his apartment.

ERRORS PATENT

A review of the record for errors patent reveals none.

*388
ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant complains that he did not receive effective assistance of counsel because his attorney did not object to the defendant’s being tried in identifiable prison clothing. The same issue was dealt with in defendant’s 1993 appeal. This court stated:
The defendant also alleges prejudice because he wore prison clothes and his counsel did not object. Compelling a criminal defendant to stand trial in identifiable prison attire over his express objection infringes upon his presumption of innocence and is a denial of due process. La. Const. Art. I, Section 16; Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); State v. Spellman, 562 So.2d 455 (La.1990). Failure to make a timely objection negates a constitutional violation. State v. Brown, 585 So.2d 1211, 1213 (La.1991), quoting Estelle, 425 U.S. at 513, 96 S.Ct. at 1697.
|/The defendant did not request an opportunity to change clothes. He claims the prison uniform was a focal point because witnesses identified him in court by his clothing. However, only one witness noted the uniform for identification.
The defendant was gagged a very short time and attention was not focused on his prison clothing. Counsel’s performance was not defective under Strickland, 466 U.S. at 668[, 104 SCt. 2052],
Regardless, under Strickland, 104 S.Ct. at 2052, counsel’s errors were not so serious that the defendant was deprived of a fair trial. There was no reasonable probability that, but for defense counsel’s errors, the result of the trial would have been different. The evidence of guilt is overwhelming.
The fourteen year old victim who was raped in her bed named the defendant when police officers arrived. The victim knew the defendant because he visited the apartment she shared with another teenager and an older lady. The victim identified the defendant shortly after his arrest and in court. Her teenage roommate, who accidentally interrupted the rape, saw the defendant as he ran from the apartment. She gave his name to the police and identified him in court.
This assignment has no merit.
State v. Winding, unpub. 92-KA-0855 (La. App. 4 Cir.1993), pp. 4-5, 618 So.2d 1249. As noted above, the Supreme Court denied writs from this appeal.
It must be noted that under the cases cited above, it is not the presence at trial in prison garb that violates the defendant’s rights to a presumption of innocence. Rather, it is being compelled to stand trial in prison clothes in the face of an objection by defendant that violates his rights. There is no doubt that had the defendant objected, the failure of the court to allow him to change clothes prior to trial would have resulted in reversible error. However, there is no indication the defendant ever objected to being tried in prison garb. Indeed, from a reading of this court’s opinion in his last appeal, his only objection was to being' gagged in front of the jury when he indicated he did not want to go to trial with his counsel at that time. Thus, there is no indication the defendant was compelled to stand trial in |sprison clothes, which would have been a violation of his rights and would have mandated that this court reverse his conviction.
The defendant argues here, as he did in his last appeal, that his counsel was ineffective for failing to object to the prison clothes. In his prior appeal, this court conducted a review under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, *389 80 L.Ed.2d 674 (1984), and found that there was no reasonable probability that his appearance in prison clothes, due his counsel’s failure to object, caused a different verdict. This appears to have been the proper procedure because counsel on the prior appeal admitted no objection was made. In State ex rel. Martin v. State, 94-1526 (La.9/20/96), 679 So.2d 414, where it was unclear if an objection was made, the Court remanded the case for a determination of whether an objection was made and, if no objection was found, for a further determination of whether the failure to object constituted ineffective assistance of counsel under the Strickland standard. Here, this court applied the Strickland standard in the prior appeal and found counsel was not ineffective.
Because this court has already addressed the merits of this same assignment of error in defendant’s previous appeal and defendant has not pointed out how the previous ruling was in error, this court need not address this issue again. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant complains that the trial court erred in failing to protect the record and in failing to ensure the availability of the transcripts of the hearings on the motion to suppress the identification and sentencing.
IfiThe state constitution provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const. Art. I, § 19. In felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel” is statutorily required. La.C.Cr.P. art. 843. This court has recognized that a complete appellate review of a defendant’s conviction and sentence can be accomplished even when there are missing portions of the trial record. In State v. Thomas, 92-1428, (La.App. 4 Cir. 5/26/94), 637 So.2d 1272, imit denied, 94-1725 (La.11/18/94), 646 So.2d 376, cert. denied, and Thomas v. Louisiana, 514 U.S. 1054, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995), this court found that the record was adequate for full appellate review. Missing from the appeal record were transcripts of the voir dire, jury instructions, opening statements, and closing arguments. The court noted that “[bjecause the missing portions of the trial record are not evidentiary, their absence does not compromise the defendants’ constitutional right to a judicial review of all evidence.” Thomas, 92-1428 at p.2, 637 So.2d at 1274. Further, the minute entries of the trial did not indicate that the defense raised any objections during the proceedings.
Additionally, in State v. Lyons, 597 So.2d 593 (La.App. 4 Cir.1992), this court concluded that the appellate record was adequate for review although transcripts of the voir dire, the impaneling of the jurors, opening statements, and a portion of the jury charges were missing. The court noted that the defendant had |7made no specific assignments of error as to the missing portions of the record except to state that they were missing.
In the case sub judice, defendant first asserts that he is prejudiced by the inability of this court to review the hearing on the motion to suppress the identification and determine whether proper procedures were followed during the identification process, or if the identifications were tainted. We disagree. It does not appear *390 that defendant is prejudiced by the absence of this transcript from the record because the victim, her roommate, and the investigating officers all testified at trial about the on-scene identification of defendant as the victim’s assailant. Officer Neal Charles testified that he took defendant to the victim’s apartment for identification purposes and that no one forced or threatened the victim to make an identification. He further testified that no one told the victim that she had to identify anyone. He, as well as Officer Jones, was extensively questioned by defense counsel about the circumstances surrounding the identification of defendant by the victim and her roommate. The victim testified that she saw the defendant every day when he visited Ms. Johnson, and Ms. Turner stated that defendant came over regularly.
When viewing an out-of-court identification procedure for its constitutionality and its admissibility in court, the appellate court must first make a determination of whether the police used an im-permissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Valentine, 570 So.2d 533 (La.App. 4 Cir.1990). If the court finds in the affirmative, the court must then decide, under all of the circumstances, if the suggestive procedure gave rise to a substantial likelihood of irreparable |smisidentification. Id. In Manson v. Brathwaite, the Supreme Court set forth a five-factor test to determine whether the identification was reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. See also Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
Although a one-on-one confrontation between the suspect and the victim is generally not favored, it is permissible when justified by the overall circumstances, especially when the accused is apprehended within a relatively short time after the crime and is returned to the crime scene. State v. Grubbs, 93-2559 (La.App. 4 Cir. 10/25/94), 644 So.2d 1105, writ denied, 94-2880 (La.5/5/95), 654 So.2d 323; State v. Walters, 582 So.2d 317 (La. App. 4 Cir.), writ denied, 584 So.2d 1171 (La.1991). Such an identification is proper because prompt confrontation between the suspect and the victim promotes fairness by assuring reliability of the identification since the victim’s memory is still fresh. Further, it allows the expeditious release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981).
It does not appear that from the trial testimony that the trial court erred in denying defendant’s motion to suppress the identification. The victim testified that she saw defendant every day when he came to visit Ms. Johnson at the apartment they shared. Ms. Turner also knew defendant because she said that he came over to their apartment regularly. Because both witnesses already knew the defendant, there was not a substantial likelihood of misidentification from the use of the one-on-one identification procedure.
| ¡¡Defendant also asserts that he is prejudiced by the inability of this court to review the sentencing transcript for compliance with La.C.Cr.P. art. 894.1 and to determine whether his sentence is excessive. Defendant was given a mandatory life sentence for aggravated rape. He argues that the trial court would have failed to comply with Article 894.1 if it gave no *391 other reason for imposing the life sentence other than that it was statutorily mandated.
In State v. Prestridge, 399 So.2d 564 (La.1981), the Louisiana Supreme Court rejected the argument that the mandatory life sentence for a conviction of aggravated rape constituted cruel, unusual, and excessive punishment as prohibited by the Eighth Amendment to the United States Constitution and Article 1, Section 20 of the Louisiana Constitution. As noted by the Supreme Court with regard to mandatory minimum sentences under the Habitual Offender Law, a court may only depart downward from a minimum sentence if there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Defendant gives no reasons as to why the mandatory life sentence would be excessive in this instance, or what extraordinary circumstances would have justified the trial court in departing from the mandatory sentence. Hence, this assignment of error is without merit.

CONCLUSION

Accordingly, for the foregoing reasons, the defendant’s conviction and sentence are affirmed.

AFFIRMED.

. In accordance with La. R.S. 46:1844, to protect the identity of the victim, she will be referred to by her initials.