804 So.2d 57 (2001)
STATE of Louisiana
v.
Rickey KING.
No. 2000-KA-2767.
Court of Appeal of Louisiana, Fourth Circuit.
August 22, 2001.
*58 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.
KIRBY, Judge.
On March 4, 1993, the defendant, Rickey King, was charged by bill of information with armed robbery, a violation of La. R.S. 14:64. At his arraignment on March 9, 1993, he pleaded not guilty. After trial on January 6, 1994, a twelve-member jury found him guilty as charged. He was sentenced on March 29, 1994, to serve forty-nine years without benefit of parole, probation, or suspension of sentence as a second offender under R.S. 15:529.1. In his first appeal, 94-KA-1972, the defendant requested only a review of the record for errors patent. This Court affirmed his conviction and sentence and granted appellate counsel's motion to withdraw.[1]State v. King, 94-1972, 654 So.2d 1376, unpub. (La.App. 4 Cir. 6/7/95).
The defendant filed an application for post conviction relief in the district court, but the trial court never ruled on it. In writ 99-K-0397 the defendant brought his ineffective assistance of counsel claims to this Court. On April 6, 1999 this Court granted the writ, finding merit in the defendant's second claim that he had ineffective assistance of counsel on appeal because the appellate brief filed by counsel *59 was similar to the one found inadequate in State v. Jyles, 96-2669 (La. 12/12/97), 704 So.2d 241. The district court was ordered to grant the defendant an out-of-time appeal.[2] On May 12, 1999 the trial court granted the out-of-time appeal. The appellate record in the defendant's first appeal (94-KA-1972) was filed as an exhibit in this second appeal.
At trial John Michael Lawrence testified that about 9:00 p.m. on February 19, 1993, he arrived at his home in the 1000 block of Third Street carrying a guitar and some groceries when someone appeared behind him.[3] The man "brandished a gun, a silver gun, and told me to give him all my money or he was going to kill me." Mr. Lawrence gave him $6.00, and, when the man asked for Lawrence's wallet, Lawrence spun around and got hold of the gun. The two men struggled for a moment until Lawrence held the gun. At that point the assailant reached into the front of his pants, saying, "That's all right, I got something else for you, right here." Lawrence tried to fire the gun, but he could not. He then threw the gun into the street and jumped on the assailant; the two began fighting. The assailant got hold of the gun again and used it to hit Lawrence in the head. Someone from Parasol's Bar stepped out, saw the fight, and called the police. Meanwhile, several bar patrons held the defendant in place until the police arrived.
New Orleans Police Officer Byron Mitchell testified that when he arrested the defendant for armed robbery on February 19, 1991, about 9:20 p.m., he retrieved $6.00 from him. The officer also took a handgun into evidence.
June Galloway, who works at Parasol's Bar, testified that at 9:00 p.m. on the night in question one of the patrons left the bar and then immediately returned saying that a fight was occurring outside. Several men left; one returned to give Ms. Galloway a gun that had been retrieved. She put it in a drawer behind the bar, and when the police arrived, she gave it to them. When Ms. Galloway went outside, she saw the defendant being held down on the ground and realized that her boyfriend, John Lawrence, had been involved in the incident.
Oliver Meager, a patron of Parasol's, testified that when he left the bar, he heard someone say, "Oliver, I'm being robbed." Mr. Meager saw his friend, John Lawrence, on the ground fighting with man who had a gun in his hand. Mr. Meager ran back into the bar to get help.
The defendant, Rickey King, testified that on the night in question he was walking toward the St. Thomas Project, and John Lawrence was walking in front of him. Mr. King explained that he had recently been shot in the foot, and as he was walking that night, his gun fell to the ground, he inadvertently kicked it, and John Lawrence turned around. Both men reached for the gun and then began struggling with each other for it. Mr. King denied robbing John Lawrence or possessing $6.00 when he was arrested, but he admitted that he had a prior conviction for possession of a stolen automobile. Mr. King testified that the gun had no bullets and no firing pin.

ERRORS PATENT
A review of the record reveals one sentencing error. Under La. R.S. *60 14:64[4] and La. R.S. 15:529.1[5] the defendant, who was found to be a second offender, could have been sentenced from forty-nine and one-half years to one hundred ninety-eight years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court sentenced him right below the statutory minimum with the forty-nine year sentence. The defendant's sentence of forty-nine years at hard labor without the benefit of parole, probation, or suspension of sentence is an illegally lenient sentence. However, the State did not raise that issue. An error favorable to the defendant that is discovered during an errors patent review, not raised by the State, may not be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986); State v. King, XXXX-XXXX (La. App. 4 Cir. 3/07/01), 782 So.2d 654.

ASSIGNMENT OF ERROR NUMBER 1
The defendant argues that it was error to require him to appear before the jury in prison clothing. He claims that the issue is properly raised on appeal even though there was no defense objection because this Court granted relief on the defendant's application for post conviction relief. The defendant argues that his conviction should be reversed "for the impermissible infringement upon his presumption of innocence caused by the incompetence of his trial counsel and the court." The State counters that without an objection by the defendant or his counsel to the prison clothing, there was no constitutional violation, and the defendant is precluded from raising the issue on appeal under La. C.Cr.P. art. 841.
A defendant has the right to appear before the jury without suffering the inherently prejudicial infringement on his presumption of innocence occasioned by the forced wearing of prison garb. See also La. Const. Art. I, Section 16; State v. Spellman, 562 So.2d 455, 456 (La.1990), citing Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); State v. Winding, XXXX-XXXX (La.App. 4 Cir. 4/11/01), 787 So.2d 385. In Winding, this Court noted that it is not the defendant's presence at trial in prison garb that violates his right to a presumption of innocence. Rather, it is being compelled to stand trial in prison clothes in the face of an objection by the defendant that violates his rights. Failure to make a timely objection negates the presence of compulsion required to establish a constitutional violation. State v. Brown, 585 So.2d 1211, 1213 (La.1991), quoting Estelle, 425 U.S. at 513, 96 S.Ct. at 1697.
Writ 99-K-0397 was an application for post conviction relief raising ineffectiveness of counsel claims. This Court granted the writ on the one issue of ineffectiveness of counsel on appeal and granted the defendant an out-of-time second appeal under Jyles. This Court pretermitted consideration of the defendant's other claims (that counsel was ineffective for failing to argue that the State did not produce the Boykin transcript to prove the predicate felony and for failing to investigate the case for exculpatory evidence as well as for allowing relator to be tried in prison clothes) and stated that the other claims could be raised on appeal. Contrary to the defendant's argument, he was not granted relief on the issue of trial counsel *61 failing to object to the prison clothing. The defendant's other claims related to ineffective assistance of counsel. Without an objection to the prison garb, there was no constitutional objection. This argument lacks merit.
However, at the conclusion of the defendant's argument, he claims that his conviction should be reversed because of the incompetence of his counsel. In light of that statement, the defendant's claim that counsel was ineffective for failing to object to the defendant wearing prison garb will be considered. Ineffective assistance of counsel claims have been addressed on appeal, if the evidence needed to decide the issue may be found in the record. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224; State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250. A review of the trial transcript clearly shows that the defendant was wearing prison clothing at trial.
However, when a defendant asserts a claim of ineffective assistance of counsel for failing to object to the prison garb, he must carry his burden of establishing that his counsel's failure to lodge a timely objection prejudiced his case to the extent that the trial was rendered unfair and the verdict suspect. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There must be a reasonable probability that, but for defense counsel's error, the result of the trial would have been different. Id.
Here, the evidence of the defendant's guilt was overwhelming. The defendant was caught in the act of robbing John Lawrence, who identified the defendant as the perpetrator. The intended victim was able to grab the gun and to wrestle with the defendant until several neighbors/bar patrons were able to call the police and hold the defendant until the officers arrived. In light of the overwhelming evidence of the defendant's guilt, he has not met his burden of proof.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant argues that the trial court erred by denying his motion to reconsider sentence and by imposing an excessive sentence. He contends that there is clear and convincing evidence to rebut the presumption of the constitutionality of the statute and to show that his forty-nine year sentence at hard labor without benefit of parole, probation, or suspension of sentence is constitutionally excessive. The defendant argues that the trial court failed to articulate any factors under La.C.Cr.P. art. 894.1, and defense counsel offered nothing to mitigate the sentence.[6] He notes that he was twenty-two years old at the time of his arrest, his prior conviction was for the non-violent crime of possession of stolen property when he was eighteen, and he did not have an extensive juvenile record. The gun used in the armed robbery had no firing pin and no bullets. Therefore, he argues that the sentence should be vacated, and the case remanded for resentencing.
The State counters that the defendant failed to show that he was exceptional as is required under State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, to rebut the presumption that a mandatory minimum sentence imposed under the Habitual Offender Law is constitutional. It points out that the victim did not know that the gun was inoperable, and the defendant twice threatened to kill the victim. The State *62 argues that under Johnson, a trial court may not rely solely upon the non-violent nature of past crimes for declaring that a mandatory minimum sentence is excessive. It claims that the forty-nine year sentence was not excessive.[7]
In State v. Lindsey, 99-3256, pp. 4-5 (La.10/17/00), 770 So.2d 339, 342-43, the Louisiana Supreme Court summarized the current jurisprudence relating to the issue of sentencing below the statutory minimum of the multiple offender law:
The Legislature enacted the Habitual Offender Law pursuant to its sole authority under Article 3, § I of the Louisiana Constitution to define conduct as criminal and to provide penalties for such conduct. State v. Johnson, supra at 675; State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Taylor, 479 So.2d 339, 341 (La.1985). This Court has repeatedly held that the statute is constitutional and therefore, the minimum sentences the statute imposes upon multiple offenders are presumed to be constitutional, and should be accorded great deference by the judiciary. State v. Johnson, supra; State v. Dorthey, supra. However, courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution even though it falls within the statutory limits provided by the Legislature. State v. Johnson, supra at 676; State v. Sepulvado, 367 So.2d 762, 767 (La.1979).
In State v. Dorthey, we held that this power extends to the minimum sentences mandated by the Habitual Offender Law and that the trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment" or is nothing more than "the purposeful imposition of pain and suffering" and "is grossly out of proportion to the severity of the crime." State v. Dorthey, supra at 1280-1281.
Thereafter, in a series of writ grants, we acted to curtail the district court's use of Dorthey in cases in which it appeared that the courts were simply substituting their judgment of what constituted an appropriate penalty for that of the Legislature. See, e.g., State v. Handy, 96-2505 (La.1/5/97), 686 So.2d 36; State v. Bastian, 96-2453 (La.12/13/96), 683 So.2d 1220; State v. Randleston, 96-1646 (La.10/4/96), 681 So.2d 936; State v. Wilson, 96-1600 (La.10/4/96), 680 So.2d 1169; State v. Johnson, 96-1263 (La.6/28/96), 676 So.2d 552; State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669; State v. Kelly, 95-2335 (La.2/2/96), 666 So.2d 1082; State v. Lombard, 95-2107 (La.11/27/95), 662 So.2d 1039.
This effort culminated in Johnson, where we set out guidelines for when and under what circumstances courts should exercise their discretion under Dorthey to declare excessive a minimum sentence mandated by the Habitual Offender Law. We held that "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." State v. Johnson, supra at *63 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. (Citing State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring)).
In making this determination, we held that "while a defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." Id. This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Id.
In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we instructed that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. Id. at 677.
Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. Id.

Lindsey, pp. 4-5, 770 So.2d at 342-43.
Here, the defendant said nothing after being adjudicated a second offender. Defense counsel declared that the defendant was ready for sentencing. The trial court then sentenced the defendant to forty-nine years at hard labor without the benefit of parole, probation, or suspension of sentence.[8] Defense counsel filed the motion to reconsider in order for the defendant to be able to proceed with an application for post conviction relief. The trial court denied the motion, and a defense objection was noted.
The defendant did not rebut the presumption that the mandatory minimum sentence is constitutional and show that he was exceptional; he did not show that because of unusual circumstances, he was a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. The trial court was aware of his non-violent prior conviction for possession of stolen property, but this time the defendant had progressed to the much more serious crime of armed robbery. Although the gun was inoperable, the victim did not know that fact, and the defendant used the gun to strike the victim on the head. The defendant did not meet *64 his burden of clear and convincing evidence.
This assignment of error lacks merit.
For the reasons stated above, we affirm the defendant's conviction and sentence.
TOBIAS J. CONCURS WITH REASONS.
AFFIRMED.
TOBIAS J. concurring.
I respectfully concur.
It is clear from State v. Spellman, 562 So.2d 455 (La. 1990), and its progeny, that a defendant has the right to appear before a jury without suffering the inherently prejudicial infringement of his presumption of innocence occasioned by the forced wearing of prison garb. I find it incredible that any judge would permit an accused to appear for trial before a jury in garb that readily identifies the accused as being held in prison. Further, I am well aware that a defendant's counsel may attempt to "sandbag" a trial by failing to object that the accused is appearing before the jury in prison garb, preserving for post-conviction relief the issue of ineffective assistance of counsel. Effective counsel would ordinarily advise his or her client that he or she does not have to appear before the jury in prison garb and that the appearance in such clothing might adversely effect the adjudication of the case. A trial judge in a jury trial should carefully scrutinize the defendant's clothing to ascertain whether that clothing is prison garb. If the clothing is prison garb, the trial judge should advise the accused that he or she has the right to appear in clothing that is not identifiable as prison garb and should obtain on the record a waiver of the right if the accused elects to appear in prison garb.
The jurisprudence makes it clear that a person who asserts ineffective assistance of counsel because counsel did not object to the wearing of prison garb before the jury has a right to a hearing in postconviction relief to determine whether or not he or she was wearing prison garb at trial and the effect of same upon the jury.
In the case at bar it is undisputed that the accused appeared for trial before the jury in prison garb, a sweatshirt labeled as being from Orleans Parish Prison. Further, I agree that the evidence presented at trial is overwhelming as to the defendant's guilt, especially in light of his being observed and caught during the commission of the crime of which he stands convicted. The jurisprudence indicates that the matter is appropriately deferred to post-conviction relief. The defendant should therefore, once his appeal is final and within the time limitations set forth in La. C.Cr.P. art. 930.8, consider seeking post-conviction relief and request and evidentiary hearing of the issue.
NOTES
[1] The panel consisted of Judges Byrnes, Plotkin and Jones. Judge Jones concurred and dissented in part because defense counsel filed a motion to reconsider sentence, but then the issue of the excessiveness of the sentence was not raised on appeal. He dissented from that part of the opinion granting appellate counsel's motion to withdraw. Judge Jones noted that there was no indication that the defendant had an extensive juvenile record.
[2] The defendant's remaining claims were pretermitted; relator could raise those claims on appeal.
[3] The facts have been taken from the unpublished opinion in 94-KA-1972.
[4] The version of La. R.S. 14:64 prior to the amendment by Acts 1999, No. 932, § 1 set a sentencing range from five years to 99 years without benefit of parole, probation or suspension of sentence
[5] La. R.S. 15:529.1 sets out as the sentencing range for a second offender at a term of "not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction."
[6] Appellate counsel declares that trial counsel has already been found ineffective. However, there has been no such finding by this Court. Writ 99-K-0397 was granted and the defendant was given a second appeal because appellate counsel was ineffective.
[7] The State does not mention that the sentence of forty-nine years was one-half year below the mandatory minimum sentence of forty-nine and one-half year sentence (½ of the longest possible term, 99 years).
[8] It would seem that the trial court thought that the forty-nine year sentence was the statutory minimum.