Present: All the Justices

PARADICE CARNELL JACKSON, II

OPINION BY
v. Record No. 042130      JUSTICE LAWRENCE L. KOONTZ, JR.
                          September 16, 2005
GERALD K. WASHINGTON, WARDEN,
 BUCKINGHAM CORRECTIONAL CENTER


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

This appeal arises from a judgment of the Circuit Court of Stafford County dismissing a petition for a writ of habeas corpus filed by Paradice Carnell Jackson, II. The sole issue we consider is whether the circuit court erred in denying Jackson's claim in the petition that his trial counsel rendered ineffective assistance of counsel by failing to object to Jackson being tried before a jury while wearing a jail-issued "jumpsuit."

BACKGROUND

On April 3, 2000, Jackson was indicted by the grand jury of Stafford County on two counts of statutory burglary, Code § 18.2-91, and two counts of grand larceny, Code § 18.2-95, arising from the breaking and entering on two occasions in March 2000 of a home in Stafford County owned by Darlene A. Kenyon and previously occupied by her friend, Cheryl England. Personal property belonging to each woman had been taken during the burglaries. The larceny indictments were subsequently amended

to charge Jackson with the felony offenses of petit larceny, third or subsequent offense under Code § 18.2-96.

While he was being held in jail awaiting trial, jail personnel misplaced Jackson's civilian clothes. Jackson unsuccessfully attempted to utilize the administrative procedures of the jail to have his clothes returned to him or to be compensated for their loss prior to his trial. Jackson was advised by the jail superintendent that the staff was attempting to locate his clothes and that upon his "release or transfer" he would be compensated for their loss, if still missing at that time.

Jackson also discussed with his court-appointed counsel his desire to obtain civilian clothes to wear during his trial and, in that regard, advised counsel to contact his mother. Counsel "made several attempts to contact [Jackson's] mother, but never received any response from her." Jackson was ultimately tried on the indictments before a jury in the Circuit Court of Stafford County (the trial court) beginning on April 12, 2001. The record of Jackson's jury trial does not contain a description of the jail-issued jumpsuit that Jackson wore throughout his trial. It is not disputed, however, that the jumpsuit was readily identifiable as jail clothing. Additionally, it is undisputed that Jackson's counsel did not object to Jackson being required to appear before the jury in

2

the jumpsuit, request a cautionary instruction from the trial court, or seek a continuance of the trial so that Jackson could obtain civilian clothes to wear at trial.

During the trial, the Commonwealth presented a strong evidentiary case, although largely circumstantial, in support of Jackson's guilt of the charges asserted in the indictments. For purposes of our resolution of this appeal, a detailed summary of that evidence is unnecessary. Jackson's credibility as a witness in his own defense, however, ultimately became a critical issue to be considered by the jury.

The Commonwealth's evidence established that Kenyon, the owner of the home in question, lived in Alexandria and visited her home in Stafford County "approximately every two weeks." Until early in March 2000, she had permitted England to occupy the home. Kenyon's home was burglarized on or about March 9 and again on March 26. During this time, England was in the final stage of removing her personal property from the home to another residence where she then actually resided. Various items of personal property, including televisions, stereos, an answering machine, and a vacuum cleaner, belonging to Kenyon or England were taken during the two burglaries.

On the night of the March 26 burglary, neighbors observed "lights blink on" in Kenyon's home and then a vehicle leaving the driveway of the home without its lights activated.

3

Suspecting a burglary had taken place, the neighbors promptly contacted the local sheriff's department and provided a description of the vehicle and its license tag number. A deputy sheriff en route to investigate the possible burglary encountered the vehicle described by the neighbors. The deputy stopped the vehicle and questioned the three male occupants, including Jackson, who occupied the back seat. Property in the vehicle, subsequently identified as having been taken from Kenyon's home, was impounded. The three occupants of the vehicle were not arrested at that time.

In the course of investigating the burglaries, a sheriff's detective interviewed Jackson and subsequently found more property that had been taken from the home in his possession. It was further determined that earlier Jackson had pawned a television set that had been taken from the home.

Jackson testified at length at his trial, asserting his innocence of the charges against him. Essentially, he maintained that until the vehicle in which he was a passenger was stopped by the deputy sheriff on March 26, he was unaware that the burglaries had occurred and that the personal property in question had been stolen. He further maintained that he had only been to Kenyon's home on March 26 and at that time he did not enter the home although he thought that because it was unoccupied the property had been "abandoned." Additionally,

4

Jackson maintained that he had mistakenly thought that the property he had pawned belonged to a friend who had asked him to sell it.  In sum, Jackson asked the jury to believe that he was an innocent bystander to the crimes committed by his two companions.[1]

The jury returned verdicts convicting Jackson of all the charges against him and recommended prison sentences of seven years for each of the burglary convictions and three years for each larceny conviction.  Prior to his sentencing hearing, Jackson filed a pro se motion to set aside the jury's verdicts in which he argued, inter alia, that his counsel had been ineffective in "fail[ing] to object to [Jackson's] being forced to wear a jail issue jump suit before the jury."  The trial court denied this motion and imposed sentence in accord with the jury's verdicts.

Jackson challenged his convictions on direct appeal to the Court of Appeals, asserting, inter alia, that in the trial court he had erroneously been compelled to appear before the jury in the jail-issued jumpsuit.  In an unpublished opinion, the Court of Appeals affirmed Jackson's convictions, holding that the

---

[1] On brief, we are told by Jackson's habeas counsel that Jackson's companions had been convicted of these crimes prior to Jackson's trial.  The Commonwealth did not call either of them as a witness at Jackson's trial.

issue whether Jackson had been improperly required to appear before the jury in jail clothes was barred by his counsel's failure to make an objection in the trial court, Rule 5A:18. Jackson v. Commonwealth, Record No.1675-01-4, slip op. at 2 (October 29, 2002). Jackson's petition for appeal to this Court was refused. Jackson v. Commonwealth, Record No. 022798 (May 28, 2003).

On October 14, 2003, Jackson filed a pro se petition for a writ of habeas corpus in the Circuit Court of Stafford County (the circuit court) against Gerald K. Washington, Warden of the Buckingham Correctional Center. In his petition Jackson asserted that his trial counsel had been ineffective in failing to object to his "being tried in front of a jury in a prison 'jumpsuit' after the jail lost my civilian clothes."

The Commonwealth, on behalf of the warden, filed a motion to dismiss Jackson's petition on the ground that Jackson's trial counsel was not "constitutionally obligated to object" to the fact that Jackson was required to wear jail clothes during his jury trial. The Commonwealth further contended that even if counsel's performance had been deficient, Jackson had failed to demonstrate any prejudice arising from counsel's deficient performance because there was no "reasonable probability of a different result at trial" had Jackson appeared in civilian clothes. In an affidavit from Jackson's trial counsel obtained

6

by the Commonwealth in support of its motion to dismiss, counsel conceded that Jackson had expressed a desire not to appear before the jury in jail clothes, but maintained that at the time of trial Jackson "was most anxious to have these matters resolved quickly." Although counsel opined that Jackson's "appearance in a jail jumpsuit was not prejudicial nor did it . . . impact the jury's impression of [him]," she did not indicate that her failure to object to the trial proceeding under those circumstances was based upon a trial strategy.

The circuit court reviewed Jackson's petition on the record without conducting a hearing. As relevant to this appeal, in an order dated June 18, 2004, the circuit court dismissed Jackson's petition, finding that "trial counsel reasonably chose not to object to Jackson being tried in a [jail] jumpsuit" as a "tactical decision" which did not "prejudice Jackson within the meaning of Strickland [v. Washington, 466 U.S. 668 (1984)]." We awarded Jackson this appeal.

                              DISCUSSION

Beyond question, an accused, consistent with the constitutional right to a fair trial, may not be compelled to stand trial before a jury wearing clearly identifiable jail or prison clothes. Estelle v. Williams, 425 U.S. 501, 504-05 (1976). This is so because being compelled to appear before a jury in clearly identifiable jail or prison clothes may

7

undermine the fairness of the fact-finding process and, thus, violate the accused's fundamental right to a presumption of innocence while furthering no essential state interest.  Id. Additionally, because "compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial [it is] repugnant to the concept of equal justice embodied in the Fourteenth Amendment."  Id. at 505-06.

Whether an accused's due process rights have been violated turns on the determination whether his being made to appear before the jury in jail or prison clothes is the result of actual state compulsion, a determination the reviewing court makes on a case-by-case basis.  Id. at 512-13.  In the absence of a per se rule, it has been held in one case that when the accused's civilian clothes are lost while in the possession of the state, and he is not afforded the opportunity to obtain replacement clothes, the state effectively compels the accused to stand trial in prison clothes.  Felts v. Estelle, 875 F.2d 785, 786 (9th Cir. 1989).

When the issue is raised in a direct appeal, however, courts applying Estelle v. Williams have generally held that if the accused did not formally object to standing trial in jail or prison clothes or otherwise make known to the trial court that he desired to wear civilian clothes during his trial, he was not compelled to stand trial in jail clothes.  See, e.g., Smith v.

8

United States, 182 F.3d 1023, 1025 (8th Cir. 1999); United States v. Martin, 964 F.2d 714, 719 (7th Cir. 1992). In other words, "[b]ecause the 'particular evil proscribed' is compulsion," a defendant must properly object to being compelled to appear before the jury in prison clothes, and the failure to do so in a timely fashion will constitute a waiver of the issue for the purposes of trial and direct appeal. United States v. Hurtado, 47 F.3d 577, 581 (2d Cir. 1995) (citing Estelle v. Williams, 425 U.S. at 507-10); see also Martin, 964 F.2d at 719.

The issue presented in this habeas proceeding is not whether Jackson waived an objection to being compelled to stand trial before the jury in jail clothes. Rather, the issue is whether the representation of Jackson's counsel "fell below an objective standard of reasonableness" and that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and, if so, whether that "deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial." Strickland, 466 U.S. at 687-88. Thus, the fact that counsel's failure to object to Jackson's appearing before the jury in jail clothes acted as a waiver of that issue on direct appeal does not preclude this habeas appeal.

In Estelle v. Williams, the issue whether the failure of the accused's counsel to object to the accused standing trial in jail clothes fell below an objective standard of reasonableness for effective representation was not at issue. But see 425 U.S. at 534-35 (Brennan, J., dissenting) (noting that issue of ineffective assistance of counsel was raised, but not addressed, by the lower courts). Nonetheless, the Supreme Court opined that an accused and his counsel might affirmatively choose to have the accused appear in jail clothes as a tactical decision in the hope of eliciting sympathy from the jury. Under such circumstances, the resulting waiver of the accused's right not to be required to stand trial in jail clothes would be objectively reasonable. Estelle v. Williams, 425 U.S. at 508.

Claims for habeas relief also have been denied on the basis that the record reflected an affirmative decision by counsel and/or the accused to have the accused appear before the jury in jail clothes. See, e.g., Demurjian v. State, 727 So.2d 324, 327 (Fla. Ct. App. 1999); see also Garcia v. Beto, 452 F.2d 655, 656 (5th Cir. 1971) (pre-Estelle v. Williams decision holding that counsel's affirmative decision to have accused appear before jury in jail clothes was objectively reasonable); State v. Buttner, 489 So.2d 970, 975 (La. Ct. App. 1986) (denying ineffective assistance claim on direct appeal based on trial strategy of having accused appear before jury in jail clothes).

10

However, where the record does not disclose an affirmative decision for the accused to appear before the jury in jail clothes as part of a trial strategy, the failure of counsel to object to that circumstance has been held to fall below the objective standard for reasonableness for effective legal representation. See, e.g., Felts, 875 F.2d at 786; Gaito v. Brierly, 485 F.2d 86, 88-90 & n.3 (3rd Cir. 1973); Lewis v. State, 864 So.2d 1211, 1212 (Fla. Ct. App. 2004); Ex parte Clark, 545 S.W.2d 175, 177 (Tex. Crim. App. 1977); see also Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971) (pre-Estelle v. Williams decision rejecting "strategic decision" argument and awarding habeas relief where record did not support government's contention that accused affirmatively refused to wear civilian clothes).

We find no support in the record of the present case for the circuit court's conclusion that Jackson's counsel affirmatively chose not to object to Jackson being tried before the jury in a jail-issued jumpsuit. Counsel's affidavit merely states that she perceived that Jackson was "most anxious to have these matters resolved quickly." However, counsel was also aware that Jackson was equally anxious to have civilian clothes to wear at his trial. Moreover, it is clear that Jackson intended to testify and that his credibility would be at issue. Accordingly, we conclude that the decision to permit the trial

11

to go forward without objecting to Jackson being attired in jail clothes was not the result of a strategic decision reached by counsel after consultation with her client.

The record in this case affirmatively establishes that jail personnel misplaced Jackson's civilian clothes, failed to locate them, and failed to provide him with the means to obtain civilian clothes prior to his trial. Those circumstances coupled with the nominal effort, at best, of his counsel to obtain civilian clothes for Jackson despite her awareness of his desire not to stand trial before the jury in jail clothes, clearly mandate the conclusion that Jackson was unlawfully compelled to stand trial before the jury in jail clothes. In light of the well-established law under Estelle v. Williams, its precursors and its progeny, that an accused has the constitutional right not to be compelled to stand trial before a jury in jail clothes such as those worn by Jackson in this case, it is self-evident that the failure of Jackson's counsel to raise an objection at the outset of Jackson's trial fell below the objective standard of reasonableness for effective assistance of counsel as provided by the Sixth Amendment. Accordingly, we hold that Jackson has satisfied the "performance" prong of the test under Strickland.

Under Strickland, of course, a finding that counsel's representation of a defendant fell below the objective standard

of reasonableness, standing alone, is insufficient to warrant the granting of habeas relief. Rather, "[e]ven if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense." Strickland, 466 U.S. at 693; accord Hedrick v. Warden, 264 Va. 486, 496, 570 S.E.2d 840, 847 (2002); Moore v. Hinkle, 259 Va. 479, 487, 527 S.E.2d 419, 423 (2000); Murray v. Griffith, 243 Va. 384, 388, 416 S.E.2d 219, 221 (1992). Accordingly, we turn now to consider whether under the particular circumstances of this case Jackson has satisfied the so-called "prejudice" prong of the test under Strickland.

The Commonwealth contends that the evidence of Jackson's guilt was so overwhelming as to overcome any prejudice resulting from his being compelled to appear before the jury in the jail-issued jumpsuit. We disagree. The Commonwealth's case was based primarily on the circumstantial evidence of Jackson being in possession of property recently stolen from Kenyon's home and his presence at or near that home on one occasion. Standing alone, this evidence would have been sufficient for the jury to have reasonably concluded that Jackson unlawfully broke and entered Kenyon's home and stole the items of personal property belonging to Kenyon and England that were subsequently found in his possession. The Commonwealth's evidence, however, did not stand alone. Granting Jackson a presumption of innocence, the

jury was required to consider all of the evidence, including Jackson's trial testimony that, if accepted as truthful, would have established an innocent explanation for his presence at Kenyon's home and his subsequent possession of the stolen property. In this context, Jackson's credibility before the jury was a critical issue in the necessary determination of his guilt beyond a reasonable doubt. Indeed, his entire defense depended upon the jury's favorable consideration of his credibility.

We have not previously had occasion to consider the impact upon a criminal trial of an accused being compelled to stand trial before a jury in jail or prison clothes.[2] That fact alone suggests the sensitivity and respect by the bench and bar of this Commonwealth for an accused's right to a fair trial and, thus, that the incidence of such an occurrence is rightfully rare. Nevertheless, we find ample guidance in our resolution of this case, again from Estelle v. Williams. Our task is not to independently weigh the evidence presented by the Commonwealth

---

[2] We have, however, recognized that requiring an accused to appear before a jury in shackles may impermissibly prejudice an accused's right to a fair trial. See, e.g., Frye v. Commonwealth, 231 Va. 370, 381, 345 S.E.2d 267, 276 (1986). Additionally, the Court of Appeals has addressed the issue of an accused's appearance in shackles as affecting the accused's presumption of innocence. Martin v. Commonwealth, 11 Va. App. 397, 404, 399 S.E.2d 623, 627 (1990); Miller v. Commonwealth, 7 Va. App. 367, 371, 373 S.E.2d 721, 723 (1988).

and Jackson at the trial. We do not attempt to determine whether Jackson would have been a credible witness if he had not been compelled to appear before the jury in the jail-issued jumpsuit. Rather, we evaluate the likely effect of compelling Jackson to appear before the jury in that attire "based on reason, principle, and common human experience." Estelle v. Williams, 425 U.S. at 504.

It is difficult to conceive of a circumstance more likely to disadvantage an accused than compelling him to testify in his own defense to the jury while wearing jail clothes. Reason and common human experience dictate, at a minimum, that the accused's appearance in jail clothes is such a badge of guilt that it would render an accused's assertion of innocence less than fully credible to the jury. Beyond question, in our view, such an occurrence "is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." Id. at 505. Such an unacceptable risk in the form of denying Jackson a presumption of innocence is almost palpable under the circumstances of Jackson's case.

Thus, under the specific facts of this case, we hold that counsel's failure to object to Jackson being compelled to stand trial before the jury in jail clothes satisfies the prejudice

15

prong of the test under Strickland in that counsel's failure prejudiced Jackson's right to a fair trial.[3]

CONCLUSION

For these reasons, we hold that the circuit court erred in dismissing Jackson's petition for a writ of habeas corpus. Accordingly, we will reverse the judgment appealed from, set aside Jackson's convictions, and remand the case to the circuit court with directions to issue the writ of habeas corpus and grant Jackson a new trial on the indictments at issue if the Commonwealth be so advised.

Reversed and remanded.

JUSTICE KINSER, with whom JUSTICE AGEE joins, dissenting.

To prevail on a claim of ineffective assistance of counsel in a petition for a writ of habeas corpus, a convicted defendant must satisfy the two-part test set out in Strickland v. Washington, 466 U.S. 668, 687 (1984), i.e., "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. I conclude that the convicted defendant in this case, Paradice Carnell Jackson, II, failed to establish the prejudice prong of the Strickland test. Jackson

---

[3] Because we conclude that Jackson's right to a fair trial was unlawfully prejudiced during the guilt-determination phase of his trial, we need not consider whether that constitutional right was infringed upon during the sentencing phase of Jackson's trial.

16

did not prove "that there is a reasonable probability that, but for counsel's [alleged] unprofessional error[], the result of the proceeding would have been different." Id. at 694. Thus, I respectfully dissent.

In deciding a claim of ineffective assistance of counsel, it is not always necessary to decide "whether counsel's performance was deficient before" determining whether a defendant suffered prejudice as a result of counsel's alleged errors. Id. at 697. As the Supreme Court stated in Strickland, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.; see also Yarbrough v. Warden, 269 Va. 184, 197, 609 S.E.2d 30, 38 (2005). Because that is true in this case, I will address only the prejudice prong of the Strickland two-part test.

The majority holds that counsel's failure to object to Jackson's being tried before a jury while wearing "jail clothes" satisfies the prejudice prong of the Strickland test. The majority reaches that conclusion by "evaluat[ing] the likely effect of compelling Jackson to appear before the jury in that attire 'based on reason, principle, and common human experience' " (quoting Estelle v. Williams, 425 U.S. 501, 504 (1976)). The appropriate test for prejudice, however, is not the "likely effect" of counsel's alleged deficient performance

17

but whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  This well-established test enunciated in Strickland is the one I will apply, as this Court has done on many occasions.  See, e.g. Yarbrough, 269 Va. at 196, 609 S.E.2d at 37; Lovitt v. Warden, 266 Va. 216, 249, 585 S.E.2d 801, 820 (2003), cert. denied, 541 U.S. 1006 (2004); Sheikh v. Buckingham Corr. Ctr., 264 Va. 558, 564, 570 S.E.2d 785, 788 (2002); Williams v. Warden, 254 Va. 16, 23, 487 S.E.2d 194, 198 (1997).

Since Jackson challenges his convictions, "the question," in assessing prejudice, "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Strickland, 466 U.S. at 695.  In answering that question, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," id., and "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  Id. at 696.  The burden of a convicted defendant attacking a judgment of conviction in a habeas corpus proceeding is to prove the allegations asserted in the petition by a preponderance of

18

the evidence.  Green v. Young, 264 Va. 604, 608, 571 S.E.2d 135, 138 (2002); Curo v. Becker, 254 Va. 486, 489, 493 S.E.2d 368, 369 (1997).

In the case before us, the overwhelming evidence of Jackson's guilt demonstrates that there is not a reasonable probability that, but for his counsel's failure to object to his wearing of "jail clothes," the jury's verdict would have been different.  The evidence at trial showed that the home of Darlene A. Kenyon was burglarized on two occasions in March 2000.  Pawnshop records containing Jackson's signature and physical description established that, on March 8, 2000, he sold a television to the pawnshop operator.  A deputy sheriff later determined that the television had been stolen from the Kenyon home.

In the early morning hours of March 9, 2000, another deputy sheriff, C. W. Reed, attempted to stop a vehicle for traveling at a rate of speed in excess of the posted speed limit.  Deputy Reed had to pursue the vehicle for approximately ten miles before it stopped.  The driver then fled on foot until he was apprehended about 100 yards from the vehicle.  Jackson was later identified as the driver.  The vehicle was impounded and subsequently searched pursuant to a search warrant.  During the search, items of personal property were found in the vehicle's trunk.  Several of those items were identified as having been

19

stolen from the Kenyon home and belonging to either Kenyon or her friend, Cheryl England.  Some of the personal property in the trunk that did not belong to either woman included a pair of black gloves, two flashlights, two screwdrivers, and a pair of pliers, which were obviously tools that could be used in a burglary.

Continuing, on the evening of March 26, 2000, Michael G. Hunt, who lived next to the Kenyon residence, saw lights blink on and off a couple of times in the Kenyon house and then heard "banging" noises coming from it.  Hunt then walked toward the house with a flashlight and wrote down the license plate number of a vehicle that was sitting in the Kenyon driveway.  As his wife was calling the police to report what Hunt had observed, the vehicle backed out of the driveway and proceeded along a road with its lights off.

About 10 minutes after receiving a police dispatch to be on the lookout for the vehicle Hunt had seen in the Kenyon driveway, Deputy David M. Stout, Jr., executed a traffic stop on that same vehicle.  Jackson was sitting in the back seat of the vehicle next to a "really big" box speaker.  Kenyon later identified that speaker along with another speaker and a vacuum cleaner, which were both found in the trunk of the vehicle, as property stolen from her home.

The evidence against Jackson does not end here.  He also confessed to the crimes, a fact the majority does not mention.  After the impounded vehicle had been searched and some of the stolen property recovered, a police detective, John W. Shelton, III, talked with Jackson and asked him where the remaining stolen property was located.  Jackson responded that "the only . . . stolen property that he was aware of was the stolen property that was in he [sic] and [the] other person's possession the night they were pulled over and stopped by Deputy Stout."  During that interview, Jackson changed his version of the events several times when confronted with inaccuracies in his statements.  He eventually confessed, orally and in a written statement, to stealing two speakers, a vacuum cleaner, an answering machine, two televisions, and two video-cassette recorders.  He also admitted to entering the Kenyon home on the second occasion.[*]

At trial, Jackson denied knowing that the television he sold at the pawnshop and the items found in the two vehicles were stolen.  He also claimed that he did not enter the Kenyon home on March 26, 2000 but merely sat in a vehicle outside the

_____

[*] Jackson also maintained that he did not know anyone lived at the Kenyon home and thought it was abandoned.  His assertion that he entered the home through the unlocked front door was not consistent with the physical evidence showing that the home had

21

house.  When asked why he thought he and his companions were at that particular residence, Jackson responded, "I was just out trying to clear my head, because I had had an altercation with the female that I was with at the time."  Finally, he testified that he gave four different statements to Detective Shelton "[o]ut of fear."

Given this evidence of Jackson's guilt and the nature of his explanations for why he was in possession of stolen property and present at the Kenyon house, Jackson's credibility, contrary to the majority's view, was not "a critical issue in the necessary determination of his guilt beyond a reasonable doubt." Considering the totality of the evidence before the jury, I conclude that Jackson did not carry his burden to show that, absent his counsel's alleged error, "the decision reached would reasonably likely have been different."  Strickland, 466 U.S. at 696; see also, French v. State, 778 N.E.2d 816, 826 (Ind. 2002) (evidence against the defendant was clear and he was therefore not prejudiced by appearing in jail clothes); State v. King, 804 So. 2d 57, 61 (La. Ct. App. 2001) (defendant was unable to show that counsel's failure to object to his wearing prison clothing amounted to prejudice where evidence of his guilt was overwhelming); State v. Kachovee, 2001 Ohio 2382, at *13-14

been broken into.  The basement door had a broken window, and

22

(Ohio Ct. App. 2001) (failure of counsel to object to defendant wearing prison clothing did not meet the prejudice standard in Strickland where there was ample evidence to support his conviction); Humbert v. South Carolina, 548 S.E.2d 862, 865-66 (S.C. 2001) (due to the overwhelming evidence against the defendant, he was not prejudiced under Strickland when counsel allowed him to appear at trial in a prison jumpsuit).

Likewise, Jackson did not show that there was a reasonable probability that, but for his counsel's alleged error, the result of the sentencing phase of his trial would have been different. Jackson had an extensive criminal history consisting of multiple prior felony and misdemeanor convictions. Notably, Jackson had been found guilty of rape, arson, burglary, petit larceny, brandishing a firearm and the unauthorized use of a vehicle. At the time of the commission of the crimes at issue, Jackson was on a probationary period requiring good behavior. In sentencing Jackson in accordance with the jury verdict, the trial court found that the sentence fixed by the jury was not disproportionate compared to the seriousness of the crimes, "particularly in light of Mr. Jackson's criminal history."

_____

the garage door had a missing panel on the bottom.

23

For the these reasons, I respectfully dissent and would affirm the judgment of the circuit court dismissing Jackson's petition for a writ of habeas corpus.