Present:   All the Justices

BRANDON WAYNE HEDRICK

                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 992913            November 1, 2002

WARDEN OF THE SUSSEX I
STATE PRISON

              UPON A PETITION FOR A WRIT OF HABEAS CORPUS

                                I.

     Petitioner, Brandon Wayne Hedrick, was convicted of the

capital murder of Lisa Yvonne Alexander Crider in the

commission of robbery, forcible sodomy, and rape in violation

of Code § 18.2-31(4) and (5); robbery in violation of Code

§ 18.2-58; rape in violation of Code § 18.2-61; forcible

sodomy in violation of Code § 18.2-67.1; abduction in

violation of Code § 18.2-47; and use of a firearm in the

commission of murder in violation of Code § 18.2-53.1.  The

jury fixed his punishment for the non-capital offenses within

the relevant statutory ranges.  The jury fixed petitioner's

punishment at death for the capital murder convictions.  The

circuit court sentenced petitioner in accord with the jury

verdicts.  We affirmed the judgment of the circuit court in

Hedrick v. Commonwealth, 257 Va. 328, 513 S.E.2d 634, cert.

denied, 528 U.S. 952 (1999).

     As permitted by Code § 8.01-654(C)(1), petitioner filed a

petition for writ of habeas corpus against the warden of the

Sussex I State Prison alleging, among other things, that his trial counsel were ineffective. The warden filed a motion to dismiss, and this Court entered an order directing that the Circuit Court of Appomattox County conduct an evidentiary hearing limited to the issue whether petitioner was denied effective assistance of counsel during his capital murder trial. The circuit court conducted the evidentiary hearing required by Code § 8.01-654(C), and submitted a very thorough and exhaustive written report that contained its findings of fact and recommended conclusions of law. The circuit court concluded that petitioner's allegations lacked merit, and the court submitted its report to this Court.[1]

While petitioner's habeas corpus petition was pending before this Court, petitioner forwarded a notarized letter to this Court and requested permission to withdraw his petition for habeas corpus. The following day, petitioner wrote another letter to this Court, which also contained his notarized signature. Petitioner stated in that letter:

"Dear Supreme Court of Virginia

"My attorneys will not do what I say when I tell them I wish to withdraw my appeals. My attorneys are against the death penalty and I am for the death penalty, so there is a conflict of intrest [sic] there. I beleive [sic] in the Bible, and if someone takes a life then that person should have his life

---

[1] The Honorable Richard S. Blanton submitted the report to this Court.

2

taken as well.  I am guilty of the charges in which Im [sic] being obtain [sic] for.  What I did was cruel and selfes [sic], I had no disregard [sic] for human life, there for [sic] I should be punished, for my sake and the sake of my victim.  There for [sic] since my attorneys will not abide by my demand, I personaly [sic] write my owne [sic] motion to withdraw my habius corbus pititeon [sic] and to have a [sic] execution date set as soon as possibal [sic].  Thank you for your time in this matter.

"Sincerly [sic] yours,

"B.W.H.
"Brandon Wayne Hedrick"

Subsequently, petitioner forwarded another letter to this Court that had apparently been prepared by his habeas attorneys.  In that letter, petitioner stated that he desired to proceed with his habeas corpus petition.  This Court entered an order that directed the circuit court to conduct an evidentiary hearing and determine whether petitioner desired to proceed with his habeas corpus petition.  The circuit court conducted the hearing and concluded that petitioner "desire[d] to continue with the litigation of his petition.  When questioned by the circuit court, petitioner . . . indicated that this was his final decision on this matter."

## II.

On May 10, 1997, Trevor Jones, William K. Dodson, and petitioner were together in Jones' apartment in Lynchburg. Petitioner and Jones left the apartment and traveled in Jones' truck to an area in Lynchburg near Fifth and Madison Streets

3

to find some prostitutes.  Petitioner and Jones met two prostitutes and gave them money to purchase crack cocaine.  Petitioner, Jones, and the prostitutes went back to the apartment where they smoked the crack cocaine and engaged in sexual relations.  Petitioner, Jones, and the prostitutes returned to the area near Fifth and Madison Streets.  Petitioner and Jones gave the prostitutes money and asked them to purchase more crack cocaine.  The prostitutes took the money and did not return.

Petitioner and Jones met two different prostitutes and took them to Jones' apartment where petitioner and Jones drank bourbon, smoked marijuana, and engaged in sexual relations with the prostitutes.  Around 11:00 p.m., petitioner, Jones, and the prostitutes left the apartment and returned to the area near Fifth and Madison Streets.  The prostitutes got out of Jones' truck, and Jones saw Lisa Crider, the victim in this case.

Jones knew that Crider's boyfriend sold crack cocaine, and petitioner and Jones decided to "pick up" Crider, have sexual relations with her, and rob her of any crack cocaine in her possession.  Jones approached Crider and asked her if she wanted to have sex.  Crider got into the truck and went to the apartment with Jones and petitioner.  Jones paid her $50 and

4

had sexual intercourse with her.  Petitioner did not have sexual relations with her at the apartment.

Jones left his bedroom after he had sexual intercourse with Crider, and while she was "getting dressed" Jones went to another room and spoke with petitioner.  Jones and petitioner devised a plan in which petitioner would pretend to rob Jones and Crider.  Jones did not want Crider to know that he was involved in the robbery because she knew where Jones lived, and Jones was afraid that Crider's boyfriend would retaliate against him.  Jones directed petitioner to leave the apartment and retrieve Jones' shotgun from the truck.  When petitioner entered the apartment with the shotgun, he "racked" the pump on the shotgun and "motioned for" Crider and Jones and told them to go into a bedroom.  Petitioner told Jones to empty Crider's pockets, and Jones took the $50 bill that he had paid her, cigarettes, and a cigarette lighter.  Jones placed handcuffs on Crider, covered her eyes and mouth with duct tape, and placed a shirt over her face.  Petitioner took Crider out of the apartment and placed her in the truck.

Petitioner, Jones, and Crider left the apartment at about 1:00 a.m.  Petitioner and Crider were seated in the back of the truck, and Jones drove the truck.  Petitioner removed the shirt and duct tape from Crider.  Jones stopped the truck and got out while petitioner raped Crider.

5

Petitioner and Jones decided that they would kill Crider because they feared that her boyfriend might retaliate against them. Jones drove the truck while he and petitioner tried to find a suitable location to kill Crider, who cried and pled for her life. As she pled for her life, Crider asked, "[i]s there anything I can do to make y'all not do this?" and petitioner replied that if Crider performed oral sex on him, he would "think about it." Crider performed oral sex on petitioner.

Around "daybreak," Jones drove the truck to a location near the James River, where he, petitioner, and Crider got out of the truck. Jones removed the handcuffs from Crider, bound her hands together with duct tape, and placed duct tape around her mouth and eyes. Petitioner and Jones took Crider to the river bank. Jones "turned [Crider and] faced her back to the river." As Jones began to walk to the truck, petitioner killed Crider by shooting her in the face with the shotgun.

### III.

### A.

This is the first opportunity that we have had to discuss the standard of review that we apply when we consider a circuit court's findings of fact and conclusions of law made in its report pursuant to Code § 8.01-654(C). We conclude that the circuit court's recommended conclusions of law, as

6

required by Code § 8.01-654(C), involve mixed questions of law and fact subject to our de novo review.  The circuit court's factual findings, however, are entitled to deference and are binding upon this Court unless those findings are plainly wrong or without evidence to support them.

B.

In this habeas corpus proceeding, petitioner claims that his trial counsel were ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established the legal principles that we must apply.  The circuit court properly applied these principles in its report filed in this Court.  The Supreme Court has stated that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."  Id. at 693; accord Williams v. Taylor, 529 U.S. 362, 394-95 (2000); Basden v. Lee, 290 F.3d 602, 616-17 (4th Cir. 2002); Sheikh v. Buckingham Correctional Center, 264 Va. ___, ___, ___ S.E.2d ___, ___ (2002) (this day decided).  The Supreme Court held in Strickland that "[e]ven if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense."  466 U.S. at 693; accord Moore v. Hinkle, 259 Va. 479, 487, 527

7

S.E.2d 419, 423 (2000); Murray v. Griffith, 243 Va. 384, 388, 416 S.E.2d 219, 221 (1992).

The Supreme Court has articulated the following test that we must apply to ascertain prejudice:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. . . . The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.
>
> . . . .
>
> "The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.
>
> . . . .
>
> "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways."

8

Strickland, 466 U.S. at 694-95; accord Roe v. Flores-Ortega, 528 U.S. 470, 481-82, 484-86 (2000); Bell v. Cone, ___ U.S. ___, ___, 122 S.Ct. 1843, 1850 (2002).

Additionally, as the Supreme Court stated in Roe,

> " 'no particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel.' Rather, courts must 'judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.' "

Roe, 528 U.S. at 477 (quoting Strickland, 466 U.S. at 688-90) (citations omitted). We also observe that the Supreme Court has held that "Strickland's standard, although by no means insurmountable, is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

IV.

A.

Petitioner argues that "[t]he pervading problem in this case was trial counsel's failure to communicate" which rendered them ineffective. Petitioner asserts that trial counsel did not discuss trial strategy until one business day before the trial. Petitioner claims that trial counsel did not "seriously" discuss: the witnesses; whether petitioner would plead guilty and avoid a trial on the guilt phase of the capital murder trial; a theory of defense for the guilt phase;

9

what records trial counsel had obtained relevant to the case; and the witnesses' prospective testimony.  Continuing, petitioner contends that trial counsel failed to communicate regarding:  voir dire of the jury; the names of the Commonwealth's witnesses; assignment of the opening statement and closing argument; witness subpoenas; and other information.

The circuit court concluded in its report, and we agree, that petitioner's claims are without merit.  Lee R. Harrison and James P. Baber were petitioner's trial counsel.  Harrison testified at the evidentiary hearing that any communication problem between trial counsel was limited to a complaint that Baber had not promptly disseminated information to Harrison. Harrison "testified that only on one occasion did Baber not forward material to him in a timely manner and that [Harrison] solved the problem by going to Baber's office to copy the material."  Additionally, even though trial counsel did not meet in either counsel's office, trial counsel discussed the trial of this case on numerous occasions.

Trial counsel discussed the division of trial responsibility, pretrial investigation, witnesses, and trial strategies.  Harrison agreed to prepare the expert witnesses, and Baber agreed to locate lay witnesses.  Baber collected information about petitioner's background and contacted

10

petitioner's parents and grandparents.  Trial counsel provided petitioner's mental health expert witness with information Baber had collected from his own investigation and materials provided by the Commonwealth.  Therefore, we hold that petitioner's claim that trial counsel's purported failure to communicate rendered them ineffective fails to satisfy either the performance or prejudice standards established in Strickland v. Washington.

B.

Petitioner argues that trial counsel failed to investigate and prepare adequately for trial.  Petitioner claims that the circuit court "provided [him] two attorneys, one of whom had never even selected a jury in a capital case, and neither of whom had completed even a single capital trial."  Petitioner contends that trial counsel did not speak to his friends or relatives about petitioner's background and had not spoken with witnesses prior to their testimony during the sentencing hearing.  Petitioner also claims that Dr. Gary Hawk, who was appointed to serve as petitioner's mental health expert witness during the capital murder trial, urged trial counsel to contact and interview petitioner's family members, friends, or other individuals who might have had information about petitioner's background or behavior relevant at the

11

sentencing phase of the trial, and that trial counsel failed to do so.

Continuing, petitioner claims that trial counsel failed to obtain his public school records, which indicated that petitioner had "borderline" intellectual abilities, and records concerning his family's history of alcohol and drug addiction. Petitioner argues that trial counsel made no effort to obtain an expert witness to assist or advise him in scientific areas. Petitioner states that even though trial counsel visited him separately on several occasions, there were only five meetings when both counsel met together with petitioner.

The circuit court, in its report, rejected petitioner's allegations. The circuit court found that after petitioner was indicted, trial counsel researched legal issues and prepared and filed numerous motions. Trial counsel reviewed extensive discovery provided to them by the Commonwealth that included police investigation reports, witness statements, and certificates of analysis related to forensic testing. Trial counsel collected information about petitioner's background, contacted petitioner's parents, grandparents, former employers and school personnel, and tried to obtain his school records. Trial counsel met with expert witnesses designated by the Commonwealth, including the medical examiner, a firearms

12

expert, and an expert on DNA. Trial counsel met with Dr. Gary Hawk, the mental health expert witness who was appointed by the court at their request.

The circuit court found that trial counsel met with petitioner on numerous occasions before trial. In preparation for sentencing, trial counsel met with petitioner's family members and discussed the need to provide character testimony. Trial counsel solicited petitioner's family members' help in locating friends and family character witnesses.

The circuit court also found that Baber, one of petitioner's trial counsel, had practiced law for 39 years and had maintained a practice in Cumberland County, which is in the same judicial circuit as Appomattox. Baber, who had served as the Commonwealth's Attorney for Cumberland County for 16 years, also had extensive criminal law experience and had tried innumerable felony jury trials throughout the Commonwealth. Harrison, petitioner's other trial counsel, had been involved in 12 previous capital murder cases, and he had tried jury trials involving serious felony charges such as murder, rape, and robbery. Both trial counsel had also attended seminars on capital murder trials.

In view of the circuit court's findings that are supported by the record, we hold that petitioner's contentions that trial counsel were ineffective because they allegedly

13

failed to investigate and prepare for trial are without merit. Petitioner fails to demonstrate that trial counsel were ineffective, and he fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

## C.

Petitioner argues that his trial counsel were ineffective because they failed to develop guilt phase theories. Specifically, petitioner contends that "Baber did not think that 'accidental shooting' was 'a credible theory of the case,'" but Harrison acknowledged that it was "an important point for [the defense] to make before the jury . . . [and that he] wanted to try to find someone to confirm what Brandon had to say about this accidental shooting." Petitioner claims that trial counsel failed to reconcile their difference in approaches to this potential defense. Continuing, petitioner asserts that trial counsel could have consulted other expert witnesses to pursue an "accidental shooting" defense. Petitioner argues that the Commonwealth's medical examiner provided information to trial counsel that supported a defense theory that the victim's death was accidental.

We reject petitioner's contentions that trial counsel were ineffective because they purportedly failed to develop a defense of accidental shooting. As the circuit court noted in its report, the jury did hear testimony that petitioner had

14

indicated that he was trying to shoot over the victim's head to scare her. The Commonwealth's evidence, however, showed that petitioner killed the victim by shooting her in the face with a 12-gauge shotgun from a distance of three to seven feet. The victim was not shot in the top of her head, but the "full load" hit her in the mouth.

Additionally, the evidence at trial clearly established that the suggestion that the victim was killed accidentally was initially made by Special Agent Holt, not petitioner. Special Agent Holt testified that when he interviewed petitioner, Holt attempted to minimize petitioner's involvement in the crime by suggesting to petitioner that when he shot the victim, he did so accidentally. Petitioner did not testify that the shotgun discharged accidentally. Additionally, petitioner admitted in his judicial admission filed with this Court that he was guilty of the crimes charged, which included the intentional killing of the victim. We hold that petitioner's argument that trial counsel were ineffective because they failed to develop guilt phase theories does not satisfy the performance or prejudice standards established in Strickland v. Washington.

### D.

Petitioner asserts that trial counsel were ineffective because they failed to obtain an expert witness to help them

15

develop and present evidence to the jury that petitioner accidentally killed Crider. Petitioner claims that the medical examiner's finding that the shotgun blast entered the victim's brain at a slightly "upwards angle" supported the theory that the shotgun accidentally discharged with the gun at petitioner's hip.

Petitioner introduced the de bene esse deposition of Brian Berger in evidence at the habeas evidentiary hearing. Berger, who works in a laboratory at the Department of Anesthesiology at the Medical College of Virginia, described himself as a part-time gunsmith and self-taught "wound ballistics expert." Berger testified that it was impossible for petitioner to have held the shotgun against his shoulder when the shotgun discharged because the entry of the wound on the victim's face was consistent with petitioner having held the gun on his hip and "shooting slightly upward." Petitioner claims that Berger's testimony demonstrates that expert assistance was available to trial counsel to support the theory of accidental discharge.

We hold that petitioner's contentions are without merit. The circuit court implicitly rejected Berger's testimony, and we find no reason to disagree with the circuit court. Also, the circuit court concluded that Berger "conceded that a slightly upward tilt of the victim's head at the time of the

16

shotgun blast would have produced the identical wound path from a shotgun held at [petitioner's] shoulder."  As we have already stated in Part IV.C. of this opinion, the facts do not support a theory that petitioner accidentally killed Crider.

Additionally, petitioner testified at the capital murder trial that he tried to shoot the shotgun over the victim's head; he did not testify that the shotgun accidentally discharged.  Furthermore, petitioner made a judicial admission in this Court that he was guilty of the crimes charged, which included the capital murder charge.  Therefore, we hold that petitioner's claims that trial counsel were ineffective because they did not obtain any expert witness to support this theory fail to satisfy the performance or prejudice standards established in Strickland v. Washington.

### E.

Petitioner claims that trial counsel "failed to develop evidence of involuntary intoxication as a defense."[2] Petitioner says that because he testified at the capital murder trial that he "was stoned and didn't realize what [he] was doing and didn't have a clear mind," trial counsel were

---

[2] In the context of petitioner's argument, this appears to be a typographical error.  Petitioner presents no evidence to suggest involuntary intoxication.

17

deficient for "failing to investigate and properly present at trial evidence of [his] voluntary intoxication."

As the circuit court found in its report, trial counsel did present evidence of petitioner's drug and alcohol abuse, and trial counsel argued to the jury that petitioner had consumed alcohol and drugs the night preceding the murder. And, the circuit court's conclusions are supported by the record. However, there was no evidence of the quantities of alcohol and drugs that petitioner ingested the night before the murder other than his own vague assertions made before trial and in his testimony at trial. The circuit court found that "a minimum of five hours had transpired from the time [petitioner] last ingested any substance" and the time the murder occurred. As many as seven hours may have passed between the time petitioner last ingested alcohol or drugs and the time of the murder. The evidence at trial did not depict petitioner as someone who was intoxicated or impaired by drugs. The conduct of Jones and petitioner during the early morning hours preceding Crider's murder was planned and purposeful. Jones stopped the truck and he and petitioner discussed the necessity of killing Crider. They spent several hours looking for a suitable secluded location. They removed the handcuffs to avoid leaving evidence, and petitioner wore gloves to avoid leaving any fingerprints. They placed duct

tape around the victim's hands, mouth, and eyes before they took her to the river bank. Before fleeing to Nebraska, they disposed of much of the incriminating evidence. Additionally, the fact that petitioner may have been impaired by alcohol and drugs was presented to the jury by Dr. Hawk at the sentencing phase as evidence in mitigation.

In light of defense counsel's presentation of evidence regarding alcohol and drug use, as well as the facts effectively negating an assertion of impairment, we hold that petitioner's contentions are without merit because he fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

F.

Petitioner argues that trial counsel were ineffective because they failed to submit a jury instruction on voluntary intoxication. We disagree with petitioner.

Trial counsel's performance was not deficient because, as the circuit court stated, "the evidence at the trial did not depict [petitioner] as someone who was significantly intoxicated and impaired." We have already summarized the extensive reasons why the evidence did not support a voluntary intoxication jury instruction in Part IV.E. of this opinion, and we will not repeat those reasons here. We hold that

petitioner fails to satisfy the performance or prejudice

standards established in <u>Strickland v. Washington</u>.

G.

Petitioner argues that trial counsel made errors

affecting the penalty phase of the capital murder trial.

Petitioner states that one counsel in this case spent a total

of 53 hours working on the case during the year he had to

prepare for trial.  Continuing, petitioner claims that defense

counsel failed to investigate petitioner's background,

character, and mental condition.  Petitioner says that despite

> "any imprudent reliance that counsel had on their
> mistaken belief that [petitioner] would plead guilty
> or the case would 'plead out' without any indication
> that the prosecution would allow [petitioner] to
> plead to charges that did not involve the death
> penalty, [petitioner's] trial counsel conducted no
> meaningful penalty phase investigation.  They made
> only the most superficial effort to collect records
> concerning [petitioner's] background.  They made no
> effort to identify and interview individuals
> concerning [petitioner's] background, and, in fact,
> resisted the repeated urging to do so by the mental
> health expert appointed to assist them, Dr. Hawk."

Petitioner alleges that trial counsel did not subpoena any

witnesses for the sentencing or guilt phases of the trial and

did not talk to witnesses about their testimony before trial.

Petitioner asserts that trial counsel's performance was

ineffective because counsel did not adequately utilize its

mental health expert, Dr. Hawk.  Petitioner claims that

defense counsel did not communicate with each other regarding

20

Dr. Hawk's testimony and that defense counsel failed to respond to Dr. Hawk's suggestion that counsel interview witnesses regarding petitioner's background. Petitioner contends that trial counsel did not meet with Dr. Hawk until the night before his testimony and made no efforts to ascertain the information that Dr. Hawk would need to conduct a thorough evaluation of petitioner.

Petitioner claims that the Commonwealth's Attorney was able to argue in his closing argument during the penalty phase of the capital murder trial that petitioner "has a decent family" because trial counsel failed to introduce accurate evidence about petitioner's family and home life. Petitioner states that his family members "could have described for the jury a vivid and compelling picture of the extremely chaotic and often violent environment in which [petitioner] grew up."

Petitioner also asserts that certain "[r]ecords of the Commonwealth's investigations of [his] family" could have been easily obtained and would have provided trial counsel with an accurate understanding of his family. Petitioner points out that trial counsel were provided a report from Dr. Hawk that referenced petitioner's father's history of drug abuse.

During the evidentiary hearing in the circuit court, Dr. Kent McDaniel testified about certain factors leading to "family chaos -- [petitioner's] parents' substance abuse, his

21

father's physical absence from the home for extended periods of time, his mother's psychological limitations, his father's psychiatric symptoms and his own psychological limitations, [petitioner's brother's] extensive behavioral problems, and the overall recurrent violence that was in the home" and the effect these factors had on petitioner's emotional development. Petitioner argues that this information would have created a considerably different picture of his family environment than that which was presented during his capital murder trial.

We hold petitioner's claims are without merit. As the circuit court noted in its report, trial counsel requested the appointment of Dr. Hawk to assist trial counsel to identify and present mitigating evidence at trial. Trial counsel provided Dr. Hawk with information they had obtained. Dr. Hawk had previously worked with Harrison, and Harrison was aware that Dr. Hawk would contact trial counsel if he needed additional information. According to Harrison's testimony at the evidentiary hearing, Dr. Hawk only made one request for additional information.

Dr. Hawk interviewed and tested petitioner, and he conducted his own interviews with petitioner's mother and brother. Dr. Hawk informed trial counsel of a number of mitigating factors that could be offered at trial. Dr. Hawk

22

identified, among other things, such mitigating factors as petitioner's intellectual limitations, depression, immaturity, drug use, and alcohol abuse.  Dr. Hawk also testified about these mitigating factors at the capital murder trial.

Contrary to petitioner's assertions, trial counsel met with Dr. Hawk in preparation for the capital murder trial. Trial counsel met with Dr. Hawk in Charlottesville and Appomattox.  During the week of the trial, they communicated with Dr. Hawk and spoke about the progression of the trial.

Petitioner's assertion that trial counsel failed to develop evidence concerning his intellectual limitations is without merit.  Dr. Hawk testified at the capital murder trial that petitioner's I.Q. was 76 and that 95% of similarly-aged individuals were intellectually superior to petitioner.  Dr. Hawk also testified that petitioner had performed poorly in school and that petitioner had failed the third grade.  Dr. Hawk opined that petitioner's pattern of failure "normally would indicate the presence of possibly a learning disorder or some other problem at school, but none was apparently diagnosed."

Even though petitioner contends that trial counsel failed to present evidence at the capital murder trial of his disruptive family environment, the circuit court found that petitioner "personally had directed his attorneys not to

23

attempt to present evidence of a 'bad childhood.'" Petitioner cannot, in a subsequent habeas corpus petition, assert that he was prejudiced by trial counsel's performance simply because they followed his directive.

Additionally, during petitioner's sentencing hearing at the capital murder trial, his family members and friends testified that he was raised in a "normal" family, he had not been abused, and he had been taught right from wrong. His family members described him as quiet, helpful, and respectful, and testified that recently he had become involved "with people who led him into criminal activities."

Trial counsel also presented evidence of petitioner's drug and alcohol dependence at the sentencing phase. Dr. Hawk described petitioner's history of drug and alcohol abuse, and he testified that petitioner's drug use at the time of the crimes would have "affected his thinking in a negative way." We agree with the circuit court's report that trial counsel "presented this mitigation evidence to the jury in the manner it had been formulated by Dr. Hawk."

Even though petitioner contends that trial counsel failed to develop and effectively present evidence to the jury of petitioner's intoxication at the time of the offense, petitioner ignores the record of the capital murder trial. Trial counsel presented evidence that petitioner had ingested

alcohol and drugs the night prior to the murder. Trial counsel also argued these facts to the jury. However, no one, including petitioner, knew the exact quantity of substances that he had consumed. Petitioner's own expert witness, Dr. Kent McDaniel, testified at the habeas evidentiary hearing that he could not opine with any degree of certainty that petitioner was intoxicated at the time he killed the victim. Dr. McDaniel also stated that he could not opine that petitioner was intoxicated to the point where petitioner could not form an intent to commit a specific act. Clearly, trial counsel's performance cannot be deemed deficient when petitioner could not tell counsel the quantity of drugs and alcohol that he had ingested. And, petitioner could not have been prejudiced by trial counsel's alleged deficient performance because the evidence of record clearly showed that petitioner acted with deliberation in the development and implementation of his plan to rob and kill the victim.

We note that petitioner's contention in his brief that "[b]oth Dr. Hawk and Dr. McDaniel were of the opinion that given information that [petitioner] was significantly intoxicated at the time of the offense, this condition would have significantly impaired his capacity to conform his conduct [to the] requirements of the law" is inconsistent with the record before this Court. Based on that record, neither

Dr. Hawk nor Dr. McDaniel knew, or could have known, the quantity of alcohol and drugs that petitioner ingested the night before the murder. We hold that petitioner's argument that trial counsel made errors affecting the penalty phase of the capital murder trial fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

## H.

Petitioner argues that trial counsel did not thoroughly present evidence of his remorse and cooperation. Petitioner states that three weeks before the capital murder trial, Special Agent Holt testified at petitioner's sentencing hearing in another court regarding an unrelated robbery conviction that petitioner "fully cooperated with [police officers] in making [his] statement" about Crider's death, and that petitioner expressed remorse for his acts. Additionally, petitioner contends that trial counsel failed to question Jones before or during the trial regarding petitioner's reaction to the crimes.

Petitioner also claims that trial counsel were ineffective because even though Susan Poindexter, a youth minister who had provided spiritual counseling to petitioner, testified at the capital murder trial, trial counsel did not speak with her prior to her testimony and did not question her about the substance of her contact with petitioner.

26

Petitioner also argues that trial counsel could have used jail records containing a notation that petitioner was "currently expressing extreme shame, remorse, [and] pessimism" to demonstrate that he was remorseful.

Petitioner's assertions are without merit. Trial counsel presented evidence of petitioner's cooperation with police officers. Additionally, trial counsel presented 14 lay witnesses at the sentencing hearing, and many of these witnesses testified that petitioner was remorseful. As the circuit court pointed out in its report, these witnesses described petitioner as "very regretful," "extremely remorseful," "quite remorseful," and "very sorry." The circuit court also noted in its report that every member of petitioner's family expressed remorse for the victim except petitioner himself. The circuit court stated in its report that petitioner

> "undermined his cooperation with police by asserting at trial that he had not made the statements attributed to him by police officers. Further, [petitioner's] statements to police and to a cellmate disparaging his victim clearly undermined any arguments that counsel could have made in regards to his remorse. His comments disparaging his victim as 'just another nigger dead' belied his professions of remorse. Trial counsel presented at sentencing [a black] cellmate who testified that he had not detected any racial animosity from [petitioner]. Defense counsel did present to the jury evidence of [petitioner's] cooperation and remorse to the extent that it existed."

27

Based on these findings of fact by the circuit court which are supported by the record, we hold that petitioner's contentions are without merit and that petitioner fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

I.

Petitioner argues that trial counsel's performance in the guilt phase, along with their performance at the penalty phase, affected the outcome of the penalty phase of the trial. Petitioner claims that trial counsel's "failure to adequately cross-examine Trevor Jones [about] his bias and his prior inconsistent statements left the jury with the impression that [petitioner] was probably not impaired due to drugs and alcohol at the time of the offense, significantly diminishing the impact of this mitigating factor." Petitioner also asserts that trial counsel's failure to advise him whether he should testify and their failure to competently prepare him to testify resulted in a very unsympathetic presentation of petitioner to the jury.

Petitioner's claims are without merit. As will be discussed in Part IV.K. of this opinion, trial counsel were not ineffective in their cross-examination of Jones. And, as we have already stated, there is no evidence in this record that petitioner was impaired because of alcohol or drugs at

28

the time of the offense.  Even though petitioner observes that one of his trial counsel only spent 53 hours out of court prior to trial, petitioner neglects to mention that his other trial counsel spent approximately 119 hours in preparation for the trial.

Additionally, as we will discuss in Part IV.L. of this opinion, trial counsel adequately advised petitioner whether he should testify at trial, and trial counsel adequately prepared petitioner to testify at trial.  And, as the circuit court found, petitioner wanted to testify at trial and tell his version of the events related to the crimes.  Thus, we hold that petitioner's contentions fail to satisfy either the performance or prejudice standards established in <u>Strickland v. Washington</u>.

J.

Petitioner argues that trial counsel were ineffective because they failed to present his family's history of drug abuse as mitigation evidence in the penalty phase of his capital murder trial.  As we have already stated, petitioner specifically directed trial counsel to refrain from presenting evidence of his "bad childhood."  For example, Baber gave the following testimony during the habeas evidentiary hearing:

"Q:  From Brandon Hedrick or from his parents, did anyone ever give you a reason to suspect that he

29

had a bad childhood -- that he had been neglected or bad childhood? [sic]

"A:  Well, he -- no; he told me that he didn't want any evidence like that.  I had talked to him about -- I mean, we talked about getting a mitigation expert.  And I -- you know, we had a conversation that indicated that that probably was one of the factors that might be developed or words to that effect.  And he told me that he didn't want to put on any evidence that he came from a bad house or, you know, a bad home . . . that he didn't feel like he did. . . ."

Petitioner also claims that had the jury been presented with evidence of his "borderline intelligence" and his vulnerability to the influence of others, such evidence would have significantly influenced the jury's appraisal of his moral culpability.  However, petitioner ignores the evidence presented during the trial of the capital murder proceeding.  Trial counsel presented evidence of petitioner's "borderline intelligence" and Jones' strong influence upon petitioner.

Therefore, we hold that petitioner's claims regarding a lack of mitigation evidence in the penalty phase fail to satisfy the performance or prejudice standards of the test established in Strickland v. Washington.

K.

Petitioner claims that trial counsel's failure to cross-examine Jones effectively constituted ineffective assistance of counsel.  Petitioner argues that even though trial counsel knew that Jones was biased against petitioner, trial counsel

30

failed to elicit such bias at trial. Apparently, trial counsel's notes indicated that allegedly Jones had assaulted petitioner when they were in jail because petitioner had made statements to the police officers that implicated Jones in the crimes.

Additionally, petitioner asserts that Baber's cross-examination of Jones was ineffective because when the Commonwealth's Attorney concluded his direct examination of Jones, Baber, who was supposed to conduct the cross-examination, purportedly "turned to Harrison and stated, '[y]ou do the cross.'" Harrison refused this request. Petitioner claims that Baber, who conducted the cross-examination, failed to impeach Jones about inconsistent statements that Jones had made to the police officers and failed to question Jones thoroughly about his felony convictions. Petitioner also contends that trial counsel failed to question Jones about offers of leniency that the Commonwealth's Attorney had made to Jones in exchange for his testimony.

The circuit court concluded in its recommendations to this Court, and we agree, that these contentions are without merit. The circuit court accepted trial counsel's testimony at the habeas evidentiary hearing that they made a tactical decision to emphasize in their cross-examination of Jones his

31

leadership role in the crimes. "Prior to trial, Baber and Harrison discussed the goal of stressing Jones' leadership role consistent with Dr. Hawk's recommendation." Baber elicited testimony during his cross-examination of Jones that demonstrated that Jones was "the 'brains' and that he directed [petitioner] throughout the criminal activity." Jones acknowledged his dominant role in these crimes during the cross-examination. On direct examination, Jones admitted his prior felony convictions, and he admitted that he had previously lied to police officers. As the circuit court found, Jones "acknowledged the inconsistent statements that he had previously given to law enforcement officials."

Even though Harrison was surprised when Baber asked Harrison if he would conduct the cross-examination of Jones, Baber effectively elicited the information from Jones that Harrison and Baber had agreed prior to trial should be elicited. For example, during the cross-examination, Jones admitted that his truck was used during the crimes, that he knew the victim, and that he suggested the idea of robbing the victim. And, just as important, petitioner failed to demonstrate how he was prejudiced as a result of the alleged deficiencies of trial counsel during the cross-examination of Jones. Indeed, petitioner, who admitted his guilt on at least three occasions including the judicial admission in this

Court, cannot satisfy the performance or prejudice requirements established in Strickland v. Washington.

We also agree with the circuit court's recommendation that trial counsel were not ineffective in failing to question Jones about his expectations of receiving a reduced sentence for his testimony at petitioner's capital murder trial. The Commonwealth's Attorney at the capital murder trial, Thomas W. Lawson, testified during the habeas evidentiary hearing that no promise had been made to Jones in return for his testimony. The circuit court noted in its report to this Court that "at the time Jones entered his pleas of guilty he represented to the court that no promises had been made to him" and, in fact, the Commonwealth did not recommend a reduced sentence.

We also hold that even though trial counsel did not cross-examine Jones about his purported bias against petitioner, petitioner failed to demonstrate how he was prejudiced, and he failed to establish that there is a reasonable probability that the outcome of the capital murder trial would have been different had such testimony been elicited. Furthermore, in view of petitioner's judicial admission in this Court that he is guilty of the crimes charged, he could not have been prejudiced. Therefore, we hold that petitioner fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

33

L.

Petitioner argues that trial counsel should have advised petitioner that he should not have testified at the capital murder trial because of his intellectual limitations and emotional immaturity.  Petitioner also alleges that trial counsel failed adequately to prepare him for his testimony and failed to rehabilitate him after he had performed poorly during cross-examination.

Petitioner's contentions are without merit.  The circuit court found in its report that even though trial counsel were aware of petitioner's intellectual limitations, they knew that he was capable of telling his version of the events surrounding the crimes.  Trial counsel knew that petitioner had given his version of the events to law enforcement officers on two occasions, and petitioner repeatedly informed trial counsel of his version of the crimes.  And, the circuit court found that "trial counsel also knew that [petitioner] wanted to testify and tell his version of events."  Harrison testified at the evidentiary hearing that petitioner "wanted to testify and that he had a story he wanted to tell."  Baber testified at the evidentiary hearing that petitioner "wanted to testify and that he wanted to tell his story."

Contrary to petitioner's contention, the circuit court found that even though trial counsel did not formally rehearse

34

petitioner's testimony with him, trial counsel adequately prepared him for trial.  Trial counsel "repeatedly" reviewed petitioner's version of events with him, and they questioned him about petitioner's inconsistencies in his statements to the police officers and to trial counsel.  Trial counsel "made sure that [petitioner] was familiar with his statements and stressed to [petitioner] how he should present himself."  The circuit court stated in its report that "[w]hen cross-examined, [petitioner] was combative with the prosecutor and after being confronted with his inconsistent statements, announced that he was not going to answer any further questions.  It is certainly doubtful that [petitioner] could have been rehabilitated on re-direct examination.  Counsel elected to get him off of the stand and use the beneficial parts of his testimony in closing arguments."

Based on these findings which are supported by the record, we hold that petitioner fails to satisfy the performance or prejudice standards established in Strickland v. Washington.  Indeed, in view of petitioner's judicial admission that he is guilty of the crimes for which he was charged, he could not have suffered prejudice as a result of trial counsel's purported deficiencies.

M.

35

Petitioner alleges that trial counsel were ineffective because they failed to cross-examine law enforcement officers. Petitioner asserts that the Commonwealth's Attorney "pressed the argument that [petitioner] got the idea that the shooting was accidental from Special Agent Holt, who purportedly suggested it during interrogation as a ruse to get [petitioner] to own up to shooting Lisa Crider. Trial counsel never challenged the prosecutor's rendition of events." Continuing, petitioner asserts that Deputy Sheriff Williamson, who made contemporaneous handwritten notes during his interrogation of petitioner in Nebraska, stated at the evidentiary hearing that he did not suggest to petitioner that the shooting may have been accidental. Petitioner also asserts that "Williamson also testified that, although Agent Holt 'may have said that,' Williamson did not make any notation in his contemporaneous notes that the suggestion was made."

Petitioner claims that Agent Holt's notes do not suggest that petitioner's account of the accidental shooting was a suggestion that originated with Holt. Petitioner contends that the detailed contemporaneous written notes of Deputy Sheriff Williamson and Agent Holt conflicted with Holt's testimony at trial and, therefore, adequate cross-examination would have demonstrated this conflict to the jury.

Additionally, petitioner asserts that testimony could have been elicited from these officers that petitioner had been cooperative in their investigation.

The circuit court concluded in its report, and we agree, that even though trial counsel could have cross-examined Deputy Sheriff Williamson and that trial counsel could have cross-examined Special Agent Holt further, the cross-examination of these police officers would not have led to a reasonable probability that the outcome of the trial would have been different. The circuit court noted that at the capital murder trial, Williamson demonstrated to the jury the manner in which petitioner had shown Williamson how petitioner used the shotgun to kill Crider. Williamson demonstrated the shooting by placing the stock of the weapon on his shoulder and pointing the barrel directly at the victim. And, contrary to petitioner's contentions, during trial counsel's cross-examination of him, Special Agent Holt disclosed evidence that petitioner had been cooperative with the police. We also observe that trial counsel presented other evidence during the capital murder trial that petitioner was cooperative.

We hold that petitioner fails to satisfy the performance or prejudice standard established by the test in Strickland v. Washington. And, we note that petitioner fails to demonstrate prejudice because, among other things, he admitted his guilt

37

in his statements to the police officers and in his judicial admission in this Court.

N.

Petitioner contends that trial counsel were ineffective because they failed to object to the testimony of Edna Alexander, the victim's grandmother. During the guilt phase of the capital murder trial, Alexander identified a photograph of the victim's son and she described the events that occurred the day before the victim was killed. We disagree with petitioner.

As the circuit court found in its report, trial counsel made a tactical decision that they would not object to this testimony because they believed that the information was unlikely to cause any prejudice to petitioner, and the Commonwealth's evidence "opened the door," permitting trial counsel to cross-examine Alexander about the victim's past criminal history. During trial counsel's cross-examination of Alexander, they were able to elicit information that the victim lived with Alexander because the victim had been incarcerated for drug-related convictions. Trial counsel also cross-examined Alexander about her knowledge that the victim "was a prostitute who sold drugs."

We hold that petitioner's claim regarding the testimony of the victim's grandmother fails to satisfy the performance

38

or prejudice standards established in Strickland v.
Washington.

O.

Petitioner argues that trial counsel were ineffective because they failed to object to the Commonwealth's Attorney's closing argument. During closing argument, trial counsel argued that petitioner was guilty only of manslaughter and suggested that the victim was killed accidentally. The Commonwealth's Attorney stated in rebuttal:

> "This case is not about negligent manslaughter, as [petitioner's attorney] says, and the defendant is [not] not guilty. Not guilty means he gets to walk right out that door. That means he gets to take Trevor's shotgun with him. That's not what this case is about. It's about capital murder."

Assuming, without deciding, that trial counsel should have objected to this argument, petitioner failed to demonstrate prejudice. There is simply no reasonable probability that the outcome of the trial would have been different. As the circuit court aptly concluded, "[t]he jury already knew that [petitioner] had been convicted in other jurisdictions and had received a lengthy prison sentence. [The jury] could not have been misled by this statement." In short, the jury knew that in view of petitioner's other convictions, he would not have been released from incarceration in the event the jury failed to convict him of

39

capital murder. Therefore, we hold that petitioner fails to satisfy the prejudice standard established in <u>Strickland v. Washington</u>.

P.

Petitioner, in a very conclusional argument, asserts that trial counsel were ineffective because they failed to object to venue. Petitioner says that "[t]he record in this case clearly demonstrated that venue was not proved on the substantive charges of forcible sodomy and rape, and that trial counsel neglectfully failed to object to the venue of those charges."

Petitioner's contention is without merit. As the circuit court stated in its report, "[i]t is not disputed that the murder of Lisa Crider occurred in Appomattox County at the conclusion of the criminal enterprise. Capital murder is a distinct species of homicide and venue was proper for all of the capital murder indictments in Appomattox County, regardless of where the underlying offenses occurred." <u>See</u> Code §§ 19.2-244 and -247. Additionally, robbery is a continuing offense and the crime was not completed until the victim was murdered and venue for that offense was proper in Appomattox. <u>See</u> <u>Bassett v. Commonwealth</u>, 222 Va. 844, 855-56, 284 S.E.2d 844, 851 (1981), <u>cert.</u> <u>denied</u>, 456 U.S. 938 (1982); <u>accord</u> <u>Linwood Earl Briley v. Commonwealth</u>, 221 Va. 532, 543-

40

44, 273 S.E.2d 48, 55-56 (1980), cert. denied, 451 U.S. 1031 (1981). We hold that petitioner's contention regarding a purported failure to object to venue does not satisfy the performance or prejudice standards established in Strickland v. Washington.

Q.

Petitioner alleges that trial counsel were ineffective because defense counsel failed to make a motion for a change of venue when members of the venire had been exposed to coverage about the case in the media. Petitioner states that he "was charged in a rural county with the brutal rape, sodomy, abduction, robbery, and murder of a young mother on Mother's Day" and that articles with detailed descriptions of the facts and circumstances of the case appeared in local newspapers. The petitioner claims that these articles identified him as a suspect, described the details of the crimes, and included a statement that he had confessed to the murder.

Petitioner's contentions are without merit. As the circuit court concluded in its report, "[p]etitioner has collected newspaper articles from at least three different newspapers. Over half of the articles describe the trial and subsequent events. These articles could not have influenced the jury. The majority of the remaining articles appear to be

41

routine and accurate coverage of events.  The jurors who were seated in the [capital murder trial] all assured the trial court that they could set aside any information that they had acquired about the case and base their decisions solely on the basis of the evidence presented.  Three jurors who indicated a fixed opinion as to [petitioner's] guilt were excused."

Based upon the record before this Court, trial counsel had no legitimate basis to file a motion for a change of venue based on the venire members' exposure to the media coverage.  Additionally, petitioner failed to demonstrate how he could have been prejudiced by trial counsel's alleged deficient performance.  Therefore, we hold that petitioner fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

R.

Petitioner claims that trial counsel were ineffective because they failed to conduct an adequate voir dire of the jury.  Petitioner argues that trial counsel failed to ask the members of the venire what they had read or heard about petitioner's crimes and what effect this information may have had on their abilities to serve as jurors.  Petitioner argues that even though juror Shirley Baker testified that "if someone killed someone else they should accept the same,"

42

trial counsel failed to ask questions that may have shown that she was unable to consider any penalty other than death.

Petitioner also claims that juror Melanie Burrell indicated that she believed he was guilty before she heard any evidence, but that she later changed her mind to state that she agreed that what she had heard about the case would not affect her judgment. Petitioner contends that trial counsel were ineffective because they failed to ask her about the information to which she had been exposed and how that information might affect her at the penalty phase of the trial. Petitioner claims that jurors Bonnie Burks and Thomas Franklin stated that they had fixed opinions of petitioner's guilt. Petitioner claims that jurors Raymond Coggins and Alice Dill had demonstrated strong biases in favor of the death penalty, and that trial counsel failed to scrutinize those biases. Petitioner claims that juror Dennis C. Haley stated that he "would not impose the death penalty right off," and trial counsel failed to challenge his statement. Petitioner contends that trial counsel were ineffective in their failure to scrutinize these jurors in greater detail or seek their removal from the venire for cause.

We disagree with petitioner's contentions. The record of the capital murder trial discloses that trial counsel conducted <u>voir</u> <u>dire</u> of prospective jurors, and that trial

43

counsel were successful in removing certain jurors for cause. Even though juror Baker stated that "if someone killed someone else they should accept the same," a review of the trial transcript indicates that she also stated, "I would be willing to listen to all the evidence before deciding." She said, in response to a question by trial counsel, that she would consider both aggravating factors and mitigating factors and "the whole circumstance" in deciding whether to impose a penalty of life imprisonment or the death penalty. Baker also stated, in response to a question from trial counsel, that she had not formed any opinions or conclusions that might affect her judgment based upon the information she had acquired from the media. She said that she would listen to both sides of the case and decide the case based upon the evidence presented in the courtroom.

Juror Burrell initially indicated that she had formed an opinion based upon what she had read in the newspaper, but she unequivocally stated that she could set that opinion aside and that she did not have a fixed opinion. When trial counsel specifically asked her if she felt that what she had heard about the case would affect her judgment, Burrell responded "no." When trial counsel asked her if she had any predisposition towards the imposition of the death penalty,

44

Burrell stated that she did not and that she could consider an alternative punishment of life in prison.

Even though petitioner claims that trial counsel failed to make any inquiry of juror Burks, the circuit court concluded, and we agree, that the record of the capital murder trial indicates otherwise. Trial counsel specifically asked juror Burks whether "what you already heard about this case is going to affect your judgment about what you are going to hear here? Are you going to have some notion of what you think of it already?" She responded no to these questions.

Juror Franklin stated that even though he had formed some opinion regarding the guilt or innocence of petitioner, he could set whatever impression or opinion he had formed aside and render a verdict based solely on the evidence that he would hear at trial. He stated that he had no bias or prejudice against either the Commonwealth or petitioner.

Juror Coggins initially indicated his belief that the Bible supports the death penalty and that if he found petitioner guilty he would impose a sentence of death. After further questioning, Coggins unequivocally stated that he could consider a lesser penalty. Juror Dill unequivocally stated that she would listen to all the evidence before she reached a decision about petitioner's guilt and that she did not remember the details about the articles she had read in

45

the newspapers.  She stated that she had not formed any pre-conceived ideas about the capital murder trial or about petitioner's guilt or innocence.

Contrary to petitioner's contention, trial counsel did conduct voir dire questions of juror Haley after he stated that he "would not impose the death penalty right off." According to the record of the capital murder trial, counsel asked Haley whether he was willing to listen to the evidence and at the conclusion of the trial, if petitioner were found guilty, whether Haley would consider life imprisonment as well as the death penalty, and Haley responded, "yes."  Trial counsel further asked Haley if he was predisposed to one punishment over another, and Haley responded, "no."

We hold that petitioner's arguments regarding voir dire fail to satisfy the performance or prejudice standards established in Strickland v. Washington.

### S.

Petitioner claims that trial counsel failed to coherently advise him regarding a statement that he made to police officers.  In May 1997, after petitioner's arrest, he was interviewed in Nebraska by Deputy Sheriff Williamson and Special Agent Holt.  Trial counsel were appointed after that statement was made.  Subsequently, Jones and his attorney met with Deputy Sheriff Williamson and Agent Holt and gave a

46

voluntary statement concerning Crider's murder. Petitioner, who was concerned about what information Jones may have given the police officers about the crimes, desired to give a second statement to the police officers. Petitioner contacted his attorneys and told them that he intended to make another statement to the police officers. According to petitioner, one of his trial counsel, Baber, informed petitioner that if petitioner made a second statement to the police officers, the statement could not hurt him and might help him. Harrison, petitioner's other trial counsel, stated that he told petitioner that he should not make a second statement.

Petitioner claims that trial counsel failed to obtain information that would have permitted them to render competent advice to him. Petitioner says that he made the second statement to the police officers before trial counsel had the benefit of a preliminary hearing, that trial counsel did not go to the Commonwealth's Attorney's office to examine its files, that trial counsel had not determined or assessed the mental health and intellectual and emotional capacities of petitioner, and that trial counsel did not formulate "ground rules" for the statement with the police officers.

The circuit court in its report concluded that petitioner's claims are without merit, and we agree. Harrison, one of petitioner's trial counsel, testified at the

47

evidentiary hearing that when he told petitioner that it was "a bad idea to give the statement," petitioner responded that "he was making the statement" with or without counsel. Harrison also testified that petitioner "wasn't going to allow [trial counsel] to stop the statement." The circuit court concluded in its report that "[t]rial counsel cannot be faulted for being present for [petitioner's] statement after he voluntarily and intelligently waived his right and submitted to questions by the police."

Petitioner, who made a conscious decision to speak with police officers, cannot complain in a habeas corpus petition that his trial counsel did not prevent him from making the statement, even though one of his counsel tried to do so. We hold that petitioner's claim that trial counsel inadequately advised him regarding his statement to police officers fails to satisfy the performance or the prejudice standards established in Strickland v. Washington.

T.

Petitioner alleges that trial counsel were ineffective because they failed to request a jury instruction that would have informed the jury that it must accept the testimony of an accomplice with great caution. We disagree.

Trial counsel were not required to request a cautionary accomplice instruction. "Cautionary accomplice instructions

48

. . . deal with a lack of evidence, evidence of a corroborative nature. The test, therefore, in determining whether a cautionary instruction should be granted becomes this: is corroborative evidence lacking? If it is, the instruction should be granted; if it is not lacking, the instruction should be refused. . . ." Smith v. Commonwealth, 218 Va. 455, 456, 237 S.E.2d 776, 777 (1977) (quoting Dillard v. Commonwealth, 216 Va. 820, 822, 224 S.E.2d 137, 139 (1976)).

As the circuit court pointed out in its report, corroborative evidence was not lacking at petitioner's capital murder trial. Petitioner incorrectly asserts that Jones was the Commonwealth's only source of evidence that petitioner had raped Crider. Petitioner stated to the police officers that he had consensual sexual intercourse with Crider at the apartment in Lynchburg, and he used a condom. However, seminal fluid that was consistent with petitioner's DNA type and inconsistent with the DNA type of Jones was detected in the victim's vaginal and anal areas. Petitioner admitted to the police officers that it was possible that he had committed acts of sodomy upon the victim. Additionally, petitioner failed to show that he was prejudiced by trial counsel's alleged deficient performance, particularly in light of the judicial admission he made to this Court that he is guilty of

49

the charged crimes, which includes the crimes of rape and sodomy. Furthermore, petitioner does not assert that corroboration was necessary to support his conviction of capital murder during the commission of robbery. We hold that petitioner fails to satisfy the performance or prejudice standards established in Strickland v. Washington.

U.

Petitioner contends that trial counsel were ineffective because they failed to request a jury instruction directing the jury that it must find unanimously and beyond a reasonable doubt that petitioner forced Crider to commit either oral sodomy, anal sodomy, or both before finding him guilty of forcible sodomy or capital murder in the commission of a forcible sodomy. Continuing, petitioner states that "[a] conviction for forcible sodomy requires proof that the accused engaged in 'cunnilingus, fellatio, anallingus or anal intercourse with a complaining witness,' by force." Petitioner states that the jury instructions in this case instructed the jury that it could convict petitioner if the jury found that "the penis of the defendant penetrated into the mouth or the anus of Lisa Yvonne Crider who was not then the defendant's spouse" and that the crime was against her will and by force, threat, or intimidation. Finally, petitioner claims that this instruction was constitutionally

50

defective because it permitted the jury to make two alternate findings to prove the element of sodomy – anal penetration or oral penetration – and did not require the jury to find unanimously that either act had been proven beyond a reasonable doubt.

We need not, and do not, decide whether trial counsel were required to request such jury instruction because even if counsel were required to do so, this petitioner cannot demonstrate any prejudice. Petitioner was convicted of capital murder in the commission of robbery, capital murder in the commission of forcible sodomy, and capital murder in the commission of a rape. Even if petitioner prevailed on his claim regarding the lack of unanimity for the forcible sodomy instruction, petitioner's convictions for capital murder in the commission of robbery and capital murder in the commission of a rape would not be affected. These convictions, which support the imposition of the death penalty, remain valid and enforceable. Therefore, we hold that petitioner's arguments fail to satisfy the prejudice requirement established in Strickland v. Washington.

V.

Petitioner claims that trial counsel were ineffective because they failed to request a jury instruction that required that the jury unanimously agree upon "the vileness

51

aggravating circumstance." Petitioner claims that the jury was required to agree unanimously whether petitioner possessed depravity of mind, whether petitioner committed an aggravated battery upon the victim, or whether petitioner committed acts of torture upon the victim. Petitioner claims that trial counsel were ineffective because the vileness instruction that was submitted to the jury created a risk that petitioner was sentenced to death based upon the vileness predicate even though some members of the jury may have concluded that his conduct demonstrated a depravity of mind, other jurors may have concluded that he committed an aggravated battery, and yet other jurors may have believed that he committed acts of torture upon the victim. Petitioner says that his trial counsel were ineffective for failing to request a jury instruction which remedied this so-called constitutional defect.

We hold that petitioner fails to satisfy the prejudice standard of the two-part test in Strickland v. Washington. At the penalty phase of the capital murder trial, the jury found that petitioner represented a continuing serious threat to society and that his offense was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim. Petitioner does not challenge the jury's finding that he

52

presents a continuing threat to society, and this finding alone is sufficient to support the judgment imposing the sentence of death.

## W.

Petitioner argues that trial counsel failed to preserve and argue meritorious issues on appeal. Petitioner failed to present any evidence during the evidentiary hearing on this issue. We hold that in view of petitioner's failure to present any evidence to support this claim, he fails to satisfy the performance or prejudice standard established in Strickland v. Washington.

## V.

## A.

Petitioner claims that the circuit court erred because it refused to permit his habeas corpus counsel to inspect the Commonwealth's Attorney's files. We disagree. This Court, pursuant to Code § 8.01-654(C)(2), entered an order directing the circuit court to conduct an evidentiary hearing limited to the issues raised in Claim I of the habeas corpus petition alleging trial counsel's ineffectiveness. Petitioner's allegations regarding Claim I do not raise any issue concerning the Commonwealth's Attorney's files or trial counsel's access to information in those files. Petitioner is not allowed to expand the scope of this Court's order.

53

Additionally, a habeas corpus petitioner is not allowed to embark upon a "fishing expedition" of the Commonwealth's Attorney's files. Therefore, we hold that the circuit court properly denied habeas counsel's request to examine the Commonwealth's Attorney's files.

## B.

Contrary to petitioner's contentions, we hold that the circuit court did make proper findings of fact, and the circuit court resolved those factual disputes as required by Code § 8.01-654(C)(3) and this Court's order.

## C.

Petitioner, in his amended petition for habeas corpus, raised two claims that he failed to assert in petitioner's opening brief. Specifically, petitioner alleged in his amended petition for habeas corpus that the Commonwealth failed to disclose favorable information to him in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and petitioner argued that "[j]urors failed to consider evidence presented at sentencing prior to determining to impose the death penalty and relied on prayer and religious teachings during deliberations to reach their verdict rather than the instructions of the court." We hold that these claims are procedurally defaulted because the petitioner failed to discuss these claims in his opening brief.

54

VI.

In view of the foregoing, we conclude that all petitioner's claims are without merit, and we will dismiss the petition for writ of habeas corpus.

<u>Petition dismissed</u>.


JUSTICE KINSER, with whom JUSTICE LEMONS joins, concurring.

I concur in the result of the majority opinion because I conclude that the petitioner, Brandon Wayne Hedrick, failed to establish the "prejudice" prong of the two-part test articulated by the Supreme Court of the United States in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), for judging claims of ineffective assistance of counsel in a collateral attack on a judgment of conviction.  To satisfy the "prejudice" prong, the petitioner had to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  The petitioner did not do so with regard to any of his claims.  When, as in this case, "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  <u>Id.</u> at 697; <u>accord</u> <u>Strickler v. Murray</u>, 249 Va. 120, 128, 452 S.E.2d 648, 652 (1995).  Thus, I respectfully concur.