[J-2-2022] [MO: Todd, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 17 WAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered January 14, |
| | : | 2021 at No. 200 WDA 2020, |
| v. | : | affirming in part and reversing in |
| | : | part the Judgment of Sentence of |
| | : | the Court of Common Pleas of |
| DERRICK GALLAWAY, | : | Allegheny County entered |
| | : | November 25, 2019 at No. CP-02- |
| Appellant | : | CR-0001824-2018. |
| | : | |
| | : | ARGUED: April 13, 2022 |

## DISSENTING OPINION

**JUSTICE WECHT**                                   **DECIDED: SEPTEMBER 29, 2022**

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). To vouchsafe that fairness, the due process clauses of the Fifth and Fourteenth Amendments require criminal juries to presume the defendant innocent until proven guilty beyond a reasonable doubt, using probative evidence only. This presumption of innocence "lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895).

Events at trial sometimes compromise a jury's ability to presume the defendant's innocence. For example, suppose a jury learns that a defendant has a long history of criminality. Jurors may be tempted to take a shortcut: presuming the defendant's guilt using the common, though legally invalid, intuition that individuals who have committed crimes are likely to reoffend. Consider a jury which discovers that the defendant acted violently in situations unrelated to the charges at hand. Jurors might presume a

propensity for violence and might assume that the defendant is a danger to their community. This might foster a desire among the jurors to see the defendant imprisoned, regardless of whether they believe that the evidence presented at trial has proven the charges beyond a reasonable doubt.

The need to prevent those sorts of unduly prejudicial inferences from influencing the minds of the jurors is what motivated the Supreme Court of the United States' decision in *Estelle v. Williams*, 425 U.S. 501 (1976). There, the Court held that to compel a criminal defendant to be tried before a jury while dressed in a prison uniform is to undermine the presumption that the accused is innocent until proven guilty, thereby violating the due process right to a fair trial. This is so because presenting the accused to the jury in jail garb is a "constant reminder of the accused's condition implicit in such distinctive, identifiable attire[, which] may affect a juror's judgment." *Id*. at 504-05. Forcing a defendant to stand trial in prison clothing threatens "the principle that guilt is to be established by probative evidence" only. *Id*. at 503.

The *Estelle* Court unanimously found that the risk of jurors being unduly influenced by a defendant's appearance as an incarcerated person is so great that there is no need to demonstrate that the jurors' observation of the defendant actually factored into their assessment of guilt. *See id*. at 504 ("[A]n accused should not be compelled to go to trial in prison or jail clothing because of the *possible* impairment of the presumption so basic to the adversary system.") (emphasis added). As one Justice observed: "The prejudice may only be subtle and jurors may not even be conscious of its deadly impact, but in a system in which every person is presumed innocent until proved guilty beyond a

reasonable doubt, the Due Process Clause forbids toleration of the risk." *Id*. at 518 (Brennan J., dissenting).[1]

The *Estelle* Court did not hold that compelled appearance in prison attire requires automatic reversal of a conviction. The Court indicated that, even in circumstances where a particular practice inherently threatens a defendant's right to a fair trial, the practice may not be unconstitutional if it serves some "essential state policy." *Id*. at 505. Essential state interests justify displaying the accused in jail garb only if there is a "substantial need" to do so. *Id.*

In the case that this Court decides today, we need not summon the dictates of "reason, principle, and common human experience" in order to reevaluate "the likely effects" of juries observing defendants dressed in identifiable jail clothing. *Id*. at 504. The Supreme Court of the United States already has performed that evaluation and concluded categorically that displaying a defendant before the jury dressed in such attire creates "an unacceptable risk . . . of impermissible factors coming into play." *Id*. It is settled law that such displays undermine the presumption of innocence and call the objectivity of the jury's factfinding into question.

Unlike the *Estelle* defendant, Derrick Gallaway was compelled to appear before the jury in jail garb by means of a video that the Commonwealth offered as evidence. We must decide whether it makes a difference that the jurors saw video evidence of Gallaway wearing prison garb, rather than observing a defendant dressed in jail clothing in person during the trial. If there is no meaningful distinction between the two scenarios, we must presume that the video was prejudicial. In that case, the question then becomes whether

---

[1] Justice Brennan, joined by Justice Marshall, agreed with the *Estelle* Majority that a defendant has a constitutional right not to be tried while clad in jail attire. However, the dissenting Justices rejected *Estelle*'s holding that the defendant in that case had consented to being tried in prison garb. *See Estelle*, 425 U.S. at 518.

the prejudicial video was nevertheless necessary to achieve an essential state interest, such that its admission into evidence did not produce a constitutional violation. As I reach a different answer than the Majority on these two important questions, I respectfully dissent.

**A. The harmful effects of a jury viewing a defendant dressed in jail garb in person during trial occur as well when a jury views a video of a defendant so attired.**

My colleagues declare "that a jury's observation of a videotape showing a defendant in prison clothing does not carry the same risk to the presumption of innocence as a jury's in-person observation of a defendant wearing prison clothing or restraints in the courtroom." Maj. Op. at 25-26. I fail to see how a video of a defendant bearing the mark of a convict is any less of a threat to the jury's ability to presume innocence than an in-person appearance in the same attire. Regardless of whether a defendant is wearing jail clothing during trial or is wearing such attire in a video that is played for the jury, both situations signal to a lay jury the same "unmistakable indication[] of the need to separate a defendant from the community at large." *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986).[2] That separation is problematic because it "create[s] the impression in the minds of the jur[ors] that the defendant is dangerous or untrustworthy," making it more likely that the

---

[2] The Majority takes issue with my reliance upon the Supreme Court of the United States' decision in *Holbrook*. The Majority seems to adopt the view that nothing the Supreme Court said in *Holbrook* is relevant here because that case addressed the presence of four armed and uniformed police officers in the front row of the spectators' section of the courtroom. *See* Maj. Op. at 26 n.14. The Majority's criticism is ill-founded. It is untenable to suggest that the Supreme Court's words apply only in cases that are factually indistinguishable. Our system of justice relies upon the ability of courts to apply general propositions of law to the facts of individual cases. In *Holbrook*, the Supreme Court recognized the general principle that "shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large." *Holbrook*, 475 U.S. at 569. We should not disregard the force of the High Court's words based upon the mere fact that *Holbrook* itself did not concern a defendant who was wearing jail clothing. *Holbrook* was restating the harm that was first articulated in *Estelle*, and *Estelle* did concern prison clothing.

verdict will be based upon jurors' fear of the defendant or other impermissible preconceptions. *Id.* at 570 (cleaned up).

The Majority offers no compelling reason to believe that a video of a defendant bearing the mark of a criminal is unlikely to create those same impressions. By way of analogy, consider that we have never held that prejudicial physical evidence becomes less prejudicial when it is introduced through a photograph or a video recording. The admission of a gruesome photograph of something can be prejudicial, just as the admission of the gruesome item itself can be prejudicial. *See Commonwealth v. Liddick*, 370 A.2d 729, 731 (Pa. 1977) (holding that a photograph of the victim's partially decomposed body was inflammatory and inadmissible). The fact that the alarming nature of an object is revealed to the jury in a photograph, rather than through direct courtroom encounter, has never altered the analysis required in weighing the admissibility of inflammatory evidence. *See Commonwealth v. Yount*, 314 A.2d 242, 250 (Pa. 1974) ("[T]he proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. . . . This test is also applicable to the other demonstrative evidence, *i.e.*, the clothing, admitted here.") (cleaned up). In the context of this case, the lone fact that defendant was represented pictorially is a distinction without a difference.

The Majority also relies a great deal upon the fact that, while *Estelle* involved a defendant who was dressed in jail garb throughout the trial, video evidence appears during only a fraction of a typical trial. The Majority observes that, in this case, "the videotape was relatively short – only 17 minutes long – and was played for the jury on the final day of [Gallaway's] three-day trial." Maj. Op. at 28. The *Estelle* Court did not limit its holding to those cases in which a defendant was dressed in jail garb throughout the

entirety of the trial, nor did its decision turn upon the issue of how long the jury was exposed to the prison-clad defendant.

*Estelle*'s reliance upon *Commonwealth v. Keeler*, 264 A.2d 407 (Pa. Super. 1970) (*en banc*) is telling. *See Estelle*, 425 U.S. at 504 (citing, *inter alia*, *Keeler* for the proposition that "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system"). *Keeler* involved a defendant who was forced to attend his jury selection while wearing jail garb. The defendant was compelled to stand before the jury so attired for approximately thirty-five minutes. The trial court denied the defendant's request for a new panel of prospective jurors, and the parties proceeded to trial. After the jurors who observed the defendant dressed in a jail uniform returned a guilty verdict, the defendant appealed.

An *en banc* panel of the Superior Court vacated the defendant's judgment of sentence and ordered a new trial. The *en banc* panel explained that forcing a defendant to appear before prospective jurors in jail clothing impairs the all-important precept that "defendants are presumed innocent until" the Commonwealth "bring[s] forth evidence to overcome that presumption." *Keeler*, 264 A.2d at 409. Only evidence that is "competent and probative" can overcome the presumption of innocence. *Id.* When jurors view the defendant dressed in jail clothing, they are likely to convict based upon "prejudice and fear." *Id.* That is so because "prison garb gives the appearance of one whom the state regards as deserving to be so attired. It brands him as convicted in the state's eyes." *Id.*

The *Keeler* court did not assign any weight to the fact that the venirepersons saw the defendant dressed in prison clothing for only thirty-five minutes before the commencement of his trial. The earliness and brevity of the juror's observation of the defendant had no bearing upon the outcome. Nor is there a constitutionally significant

difference between the thirty-five minutes at issue in *Keeler* and the seventeen minutes at issue here. Both periods are long enough that a reviewing court safely may assume that the jurors observed the defendant and took notice of his clothing.

I doubt that *Estelle*'s use of the phrase "constant reminder" was intended to limit its holding to cases where the jury sees the defendant dressed in prison clothing from the commencement of trial to the time that the jury begins its deliberations. If that is what the High Court intended, then a defendant could be forced to dress in prison clothes for two days of a three-day trial with no resulting encroachment upon the presumption of innocence. I presume that is not a practice which either the Majority or *Estelle* would endorse.[3]

It is highly unlikely that the United States Supreme Court intended to set a time limit on constitutionally impermissible jury exposure. Plainly, no such device would be workable. The Majority nonetheless appears to assume as much, while simultaneously offering no criteria or parameters that instruct Pennsylvania courts how to know when the exposure was "constant" and when it was not. The Majority simply dodges the difficult question of how long jurors must observe a defendant before a constitutional violation arises. The lead opinion advances no principled basis to conclude that seventeen minutes is an insignificant amount of time. That is because there is none. Seventeen

---

[3]     The use of the term "constant" likely meant only that a *de minimis* exposure generally does not rise to the level of a constitutional violation. Indeed, we have found the brevity of a defendant's compelled appearance in prejudicial attire to be a relevant consideration in other cases. For example, in *Commonwealth v. Evans*, 348 A.2d 92, 93 (Pa. 1975), a defendant wearing handcuffs was waiting for an elevator during a recess when one juror and one alternate juror passed by. In rejecting the defendant's request for a new trial, we explained that the incident "was very brief; if indeed the defendant was observed and the handcuffs were noted, it was hardly the sort of happening that would contaminate the jury's decision-making process." *Id.* at 94. There is no dispute that, in this case, Gallaway was wearing identifiable prison attire throughout the video, nor any doubt that the jury knew it. Unlike *Evans*, this is not a case where the amount of time involved allows us to credibly doubt whether the jurors observed the prejudicial attire.

minutes is ample time for a jury to observe a defendant clothed as a convict and imbued with all of the negative connotations that come with that attire. A seventeen-minute video simply cannot be blithely dismissed as the kind of "passing" observation that does not trigger the concerns and protections of *Estelle*. *Compare Commonwealth v. Johnson*, 838 A.2d 663, 681 (Pa. 2003) (holding that a testimonial "reference to Johnson's incarcerated status was passing, and not the type of 'constant reminder' proscribed by *Estelle*"), *with Commonwealth v. Cruz*, 311 A.2d 691, 693 (Pa. Super. 1973) (granting a defendant a new trial because he had twice been observed handcuffed inside the courtroom by the jury).

Neither the fact that jurors saw Gallaway in a video recording rather than in person, nor the fact that jurors observed him in jail garb for less than the entirety of trial, warrants the conclusion that Gallaway did not suffer prejudice. "[T]he consequences of compelling a defendant to wear prison clothing . . . cannot be shown from a trial transcript." *Riggins v. Nevada*, 504 U.S. 127, 137 (1992). We are constrained to presume prejudice in any case where a defendant is compelled to appear before the jury wearing a jail uniform for an extended period of time. *See id.* Regardless of the means by which the jury comes to view the defendant dressed in prison attire, *Estelle*'s reasoning applies with equal force, and courts must infer that the objectivity of the jurors was affected.

This is not to say that trial courts cannot inquire into the degree of prejudice that is likely to result in a given case, nor that they cannot determine whether other case-specific circumstances rendered the prejudice necessary or harmless. Indeed, *Estelle* made clear that a defendant's appearance in prison attire does not automatically require a mistrial in every case. As noted, evidence that threatens a defendant's right to a fair trial may nonetheless fall short of a constitutional violation if the trial court finds the evidence necessary to achieve some "essential state interest." *Estelle*, 425 U.S. at 505. Here,

however, the trial court failed entirely to perform the required assessment. Today's Majority turns a blind eye. This is error.

**B. The trial court committed an error of law in failing to determine whether the video was substantially necessary to fulfill an essential state interest.**

In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court provided guidance on how an essential state interest can excuse a practice that threatens the presumption of innocence. *Deck* addressed the constitutionality of shackling a defendant at the penalty phase of a capital trial. The Court held that shackles present the same inherent risk of undue prejudice as prison uniforms, as shackling also signals to the jury "that court authorities consider the offender a danger to the community," which is "often a statutory aggravator and nearly always a relevant factor" in the decision of whether or not to impose the death penalty. *Id.* at 632-33. The Supreme Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629.

"[A]ny such determination must be case specific; that is to say, it should reflect particular concerns . . . related to the defendant on trial." *Id.* at 634. Where the trial court has not made "formal or informal findings" as to the necessity of the practice, the trial court cannot be said to have "acted within its discretion." *Id.* The trial court's decision will be upheld only where "the record itself makes clear that there are indisputably good reasons" to support the use of the challenged practice. *Id.* at 635. In deciding whether such reasons exist, a trial court should consider the availability of alternatives that alleviate as much prejudice as possible. *See id.* at 634-35 (admonishing the trial judge for failing to explain why, "if shackles were necessary, [the judge] chose not to provide for shackles that the jury could not see").

The *Deck* Court reiterated that, "where a court, without adequate justification," compels a defendant to be displayed to a jury in restraints or jail garb, "the defendant need not demonstrate actual prejudice to make out a due process violation." *Id.* at 635. The defense does not have a duty to make a record of "the degree of the jury's awareness" of the challenged practice, which goes to "the kinds of prejudice that might have occurred." *Id.* at 634. The burden to make a record in this context rests with the trial court alone, which must detail its reasons for finding the practice justified in the case at hand. If the trial court fails to do so, the prosecution then has a burden to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 635 (cleaned up).

In the case at hand, the trial court's treatment of Gallaway's objection was an affront not only to *Estelle*, but also to *Deck*, and to the fundamental constitutional rights that those cases seek to protect. The presiding judge cavalierly dismissed Gallaway's right to not be shown in jail garb, declaring merely that "[t]his is not the only case where a defendant, a suspect is interviewed in their jail reds." N.T. Trial, 8/29/19, at 276. This is far from a case-specific finding that the video served an essential state interest, as our Constitutions demand. The trial judge also was required to explain how the video was substantially necessary to serve that essential state interest. The court did neither. *Deck* has made those findings a necessary part of a trial judge's exercise of discretion, as a matter of law. The trial court's total failure to consider any safeguards undermines the contention "that the trial judge saw the matter as one calling for discretion." *Deck*, 544 U.S. at 634; *cf. Commonwealth v. Ballard*, 80 A.3d 380, 393 (Pa. 2013) (explaining that a trial court abuses "its discretion in admitting [gruesome] photographs when the situation generally entails *indifference from the trial court or the Commonwealth to the photographs' prejudicial effect*, or where the precautions taken were not commensurate

with the nature of the scene depicted") (emphasis added). Indifference indeed is what the trial court manifested here.

Today's Majority uncritically excuses the trial court's rash dismissal of Gallaway's attempt to prevent the jury from viewing him in clothing that branded him as "dangerous or untrustworthy." *Holbrook*, 475 U.S. at 570. My colleagues go out of their way to justify the trial court's decision, despite that court's own apparent belief that it was not even required to do the same. From an appellate perspective, we are not in the best position to assess the video in relation to other evidence. We did not see the Commonwealth's evidence first-hand in open court. We did not hear the witnesses testify, nor did we observe their demeanor. The trial judge did. That is why the ball lands first in his court to engage in the correct legal analysis. The trial court here didn't even try.

Today's Majority presses on nonetheless. It relies upon a cold record alone to declare that "the videotape undoubtedly was probative because it showed [Gallaway] making numerous false statements to the police, which evidenced [his] consciousness of guilt." Maj. Op. at 27-28. The trial judge was the only one that could make that determination. And he failed to do so. In fact, he had not even viewed the video at the time he overruled Gallaway's objection, inasmuch as Gallaway objected before the video was played at trial. It is hard to understand how this Court can assume that the trial judge understood the video's relevance when he had not yet viewed the video.[4] The trial court's disregard for the law entitles Gallaway to a new trial.[5]

---

[4]    *See Ballard*, 80 A.3d at 393 (A trial court abuses its discretion in admitting prejudicial evidence where the trial court was indifferent to the prejudicial effect, or where the precautions taken were insufficient).

[5]    Under normal circumstances, I would recommend a remand to the trial court to allow it to make the required determinations at this juncture. If the trial court then found that the video was substantially necessary to achieve an essential state interest, Gallaway's conviction and sentence presumably would stand. If the court found the

**C. Even if this Court were permitted to perform the assessment in the first instance, the Majority does not demonstrate that the video was substantially necessary to achieve an essential state interest.**

Assuming that the Majority is correct in declaring that the recording of the statements "undoubtedly was probative," that makes the Commonwealth's decision to play the video all the more problematic. *Id.* at 27. The jury's assessment of the statements was tainted by the fact that Gallaway was wearing the jail uniform while making those statements.[6] The Commonwealth sought to prove that Gallaway was a liar and that his lies revealed his consciousness of guilt. Because the jurors saw Gallaway make the recorded statements while bearing a badge of criminality, those jurors were more likely to find the statements to be deceptive. *See Jackson v. Washington*, 619 S.E.2d 92, 97 (Va. 2005) ("It is difficult to conceive of a circumstance more likely to disadvantage an accused than compelling him to testify in his own defense to the jury while wearing jail clothes. Reason and common human experience dictate, at a minimum, that the accused's appearance in jail clothes is such a badge of guilt that it would render an accused's assertion of innocence less than fully credible to the jury.").

The Majority's reliance upon the fact that the jurors already knew that Gallaway was extradited is flawed as well. Arrest and extradition do not mean that a defendant always will be incarcerated while he awaits trial. There is no reason for us to assume the

---

prejudice to be inexcusable, Gallaway would be entitled to a new trial. However, such a remand is not feasible in this particular case, as Judge Mark Tranquilli, who presided at Gallaway's trial, has resigned from the bench.

[6] This point demonstrates an additional flaw in the Majority's reliance upon the fact that the video of Gallaway lasted for seventeen minutes of Gallaway's three-day trial. On the one hand, the Majority declares that the video was not prejudicial because it was not on display for the entirety of Gallaway's trial. But, on the other hand, the Majority declares that the seventeen-minute video "undoubtedly was probative." Maj. Op. at 27. While the video may not have been at the front of the jurors' minds during Gallaway's entire trial, the video was certainly a "constant reminder" of Gallaway's carceral status for the entire time that the jurors were considering what the Majority deems to be such a critical piece of evidence. *See Estelle*, 425 U.S. at 504-05.

jury did not think that Gallaway was being held on the basis that he was more dangerous and untrustworthy than the average citizen who has been charged with a crime and thus could not be released on bail. Regardless of whether the jury did or did not infer that Gallaway was being held on charges unrelated to the instant case, that undue inference is not the only harm that the prohibition on jail garb aims to prevent.

As the Superior Court once noted, prison attire "also demeans the defendant in his own mind. It makes him feel that, although presumed to be innocent, he has already lost his dignity by the very fact of arrest and charge. . . . The defendant is thereby placed in a psychological, emotional disadvantage." *Keeler*, 264 A.2d. at 409. That observation is particularly relevant here. The video was played for the jury immediately before Gallaway testified. He was forced to convince the jury of his innocence, despite the jury having just viewed him dressed as someone who is guilty and untrustworthy. *See Holbrook*, 475 U.S. at 570. Such a disadvantage makes it all the more likely that Gallaway would not be able to present his testimony in a compelling fashion. The Majority relies heavily upon the duration of the video and upon the fact that the jury knew about Gallaway's extradition. But my colleagues readily dismiss the effects that the jail garb necessarily had upon the jury's assessment of the statements in the video and the devastating effects of playing the video just before Gallaway's credibility "took center stage." Gallaway's Br. at 27. *Estelle* and *Deck* command more.

All of these potential harms could readily have been avoided. The Commonwealth could have introduced only the audio of Gallaway's interview. That would have permitted the jury to hear the probative evidence while eliminating all undue prejudice. Far from criticizing the trial judge's failure to take any meaningful steps to alleviate the harm, my colleagues instead fault Gallaway for failing to consent to the trial judge's suggested

curative instruction. *See* Maj. Op. at 27. A curative instruction cannot be deemed adequate when there was no need to sow error in the first place.[7]

## D.  Conclusion

The Supreme Court of the United States has instructed trial courts to assess whether displaying a defendant in jail garb serves a valid state interest, and if so, whether there are less prejudicial ways to fulfill that interest. The trial court violated these instructions here. It is not our job to fill in the gaps. It is our job to enforce the presumption of innocence. In order to ensure that the Supreme Court's words are something more than a mere advisory, we must vacate Gallaway's conviction and sentence. The Majority fails to criticize the trial court's abject failures in this case and fails to insist that trial courts in future cases perform the required assessment when confronted with evidence showing a defendant in jail garb. Trial courts are required to employ the safeguards contemplated in *Estelle* and *Deck*. We are bound to remind them of that duty here.[8]

Here is a striking oddity: We have insisted that trial courts employ far more stringent prophylactics in situations far less constitutionally suspect. Our decision in *Commonwealth v. Purnell*, 259 A.3d 974 (Pa. 2021), is a recent example. There, we

---

[7]     *See Commonwealth v. Powell*, 241 A.2d 119, 121 & n. 1 (Pa. 1968) (holding that the admission of prejudicial photographs of the victim's injuries constituted reversible error, despite the trial court's provision of a cautionary instruction, because the nature and extent of injuries had no bearing on finding of felony murder).

[8]     The Majority incorrectly characterizes my position as suggesting that any observation of a defendant in prison clothing requires a new trial. See Maj. Op. at 28 n.16. I do not argue that brief glimpses of a defendant in jail garb require a new trial automatically. Indeed, I do not argue that even a prolonged observation of a defendant so attired requires a new trial automatically. Rather, my position is that, when a defendant is compelled to appear before a jury dressed in jail garb, the trial court must assess whether case-specific circumstances render the prejudice either necessary or harmless. If the trial court finds that the prejudicial evidence was necessary to achieve some "essential state interest" or that the prejudice ultimately was harmless, then no relief is warranted. Here, the trial court failed utterly to perform any analysis at all.

addressed whether a trial court may permit a witness to be accompanied by a support dog during his or her trial testimony. We answered that question in the affirmative. However, we recognized that the presence of a dog in a courtroom bears a risk of prejudice to a defendant. *Purnell* thus held that, before permitting the use of a support dog, courts first must "balance the degree to which the accommodation will assist the witness in testifying in a truthful manner against any possible prejudice to the defendant's right to a fair trial and employ means to mitigate any such prejudice." *Id.* at 986. We thus instructed courts "to minimize any potential prejudice to the defendant by, *inter alia*, considering the dog's training, providing the jury with limiting instructions, and employing means to limit the jury from viewing the dog." *Id.*

Today's case is not merely about the presence of a support dog in a courtroom. The Supreme Court of the United States has held that to display a defendant in jail garb in the courtroom is to compromise that defendant's right to be presumed innocent until the Commonwealth proves guilt with probative, legally competent evidence. Even so, my colleagues still refuse to encourage precautions remotely similar to those we required when a canine enters the room. The Majority instead gives its blessing to the trial court's plain disregard of Gallaway's right to a fair trial. Today's decision will signal to trial courts that they are free to overlook matters that encroach upon the presumption of innocence as long as the cause of the encroachment is intertwined with otherwise admissible evidence, or as long as the encroachment does not continue for the entire duration of the trial.

While we all recognize "the importance of preserving trial court discretion (reversing only in cases of clear abuse)," we also must recognize the "limits on that discretion." *Deck*, 544 U.S. at 629. Here, the "the record contains no formal or informal findings" as to the necessity of playing the video of Gallaway, a circumstance that

obviously and necessarily undermines the conclusion that "the trial judge saw the matter as one calling for discretion." *Id* at 634. "If there is an exceptional case where the record itself makes clear that there are indisputably good reasons for" allowing the jury to see a defendant dressed in a jail uniform, "it is not this one." *Id.* at 635. Gallaway is not required to "demonstrate actual prejudice to make out a due process violation." *Id.* Because the Commonwealth has not demonstrated that the admission of the video was harmless beyond a reasonable doubt, Gallaway is entitled to a new trial.

Justice Donohue joins this dissenting opinion.